Christopher D. Jaime, Esq., Nev. Bar #4640
Maupin, Cox & LeGoy
P.O. Box 30000
Reno, Nevada 89520
Telephone: (775) 827-2000
Facsimile: (775) 827-2185
E-mail: cjaime@mclrenolaw.com
Attorneys for Secured Creditor
Milton M. Dambacher

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br><br>PATRICK MCCAULEY,<br>dba GC LIVESTOCK, LLC;<br>PATRICIA MCCAULEY,<br><br><br><br>Debtors.<br>_____/ | Case No: BK-13-50194-btb<br>(Chapter 12)<br><br>**OPPOSITION OF MILTON M. DAMBACHER TO DEBTORS' MOTION TO EXTEND TIME FOR FILING CH. 12 PLAN PURSUANT TO 11 U.S.C. § 1221; REQUEST FOR DISMISSAL**<br><br>Hearing Date:   May 21, 2013<br>Hearing Time:   2:00 p.m. |

Secured creditor Milton M. Dambacher ("Dambacher"), Trustee of the Dambacher 1987

Family Trust, submits this opposition to the *Motion to Extend Time for Filing Ch. 12 Plan Pursuant*

*to 11 U.S.C. § 1221* ("Extension Motion") [Dkt. 13] filed by Debtors Patrick McCauley dba GC

Livestock, LLC and Patricia McCauley ("Debtors"). This opposition is made pursuant to 11 U.S.C.

§§ 1208 and 1221,[1] FRBP 3015 and 9014, LR 9014, the papers on file herein, and any oral and/or

---

[1] Unless otherwise noted, references to "§" are to the cited section of Title 11, U.S. Code
("Bankruptcy Code").

written evidence that may come before the Court on any hearing on the Extension Motion.  It is based on the grounds in the below Memorandum of Points and Authorities.

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

## I.    STATEMENT OF RELEVANT FACTS

The Debtor filed a petition for relief under Chapter 12 of the Bankruptcy Code on January 31, 2013 ("Petition Date").  [Dkt. 1].  The § 341 meeting of creditors was held and concluded on March 1, 2013. [Dkt. 7].  During the § 341 meeting, the Chapter 12 Trustee ("Trustee") directed the Debtors to produce tax returns, substantially amend their schedules to list all leases under which they are lessor and lessee, and substantially amend their schedules to also identify and itemize all personal property they own individually and that is owned by their limited liability company.  See *§ 341 Meeting of Creditors, Transcript of Proceedings of March 1, 2013*, attached as Exhibit 1 at pp. 14, 24-31, 35.

Pursuant to § 1221, the Debtors were required to file a plan within ninety (90) days of the Petition Date, or by May 2, 2013.  Instead, the Debtors filed the Extension Motion on April 16, 2013.  The Extension Motion seeks an open extension of the time by which the Debtors are required to file a plan.  The Extension Motion fails to explain why an extension is necessary or warranted.  It states as follows:

> Debtor's [sic] have not specified to undersigned counsel what the circumstances are for the lack of filing a Plan.  Without this information it is impossible to determine if the Debtors' have cause for extension of time to file a Chapter 12 Plan.

Extension Motion at p. 2:2-4.

Along with the Extension Motion, the Debtors' attorney also filed a *Motion to Allow*

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

*Withdrawal of Counsel* (the "Withdrawal Motion") [Dkt. 14].  See Exhibit 2.[2]  Whereas the Extension Motion fails to adequately explain why the Debtors need additional time to file a plan, the Withdrawal Motion appears to shed some light on the reason.  It states as follows:

> Applicant has requested certain documents from Debtors' [sic] over the past 75 days, and as of this date they have not been provided.  These are necessary to properly represent the Debtors in this matter.  There are necessary and required pleadings that need to be filed in this case, but without the documents it would be impossible to file the pleadings.  Without these documents it makes it impossible for Applicant to represent Debtors' in their case.  Without Debtors' cooperation in providing these materials it is impossible to properly continue represent the Debtors' [sic] in this case.

Withdrawal Motion pp. 1:26 - 2:5.

## II.    ARGUMENT AND ANALYSIS

A.    <u>The Debtors Will Not Timely File a Plan and They Have Not Demonstrated Any Basis That Would Permit the Court to Extend the Plan-Filing Deadline.</u>

Section 1221 of the Bankruptcy Code states that "the debtor shall file a plan not later than 90 days after the order for relief ... except that the court may extend such period if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable."  11 U.S.C. § 1221.  The burden of obtaining an extension of the 90-day period under § 1221 lies with the debtor and it is a stringent one.  According to <u>Collier</u>:

> [T]he 90-day limitation [in § 1221] was probably included in chapter 12 for the benefit of creditors rather than for the benefit of the debtor.  Because chapter 12 lacks the safeguards for creditors that are provided in chapter 11, the 90-day limitation, together with the 45-day limitation of section 1224, is the primary protection for creditors against a debtor's languishing in chapter 12 without confirming a plan.  ***Thus, it is appropriate that the debtor should be required to meet a stringent burden if the debtor seeks an extension of the 90-day period.  The court should***

---

[2] The motion references a hearing date of "January 16, 2013" at "10:00 a.m."  However, the related notice of hearing [Dkt. 15] states the motion will be heard on May 21, 2013, at 2:00 p.m.

AUPIN, COX & LEGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

> *allow an extension only if the debtor clearly demonstrates that the debtor's*
> *inability to file a plan is due to circumstances that are beyond the debtor's control.*

8 Collier on Bankruptcy, ¶ 1221.01[2] at 1221-3 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) (emphasis added, footnotes omitted). Congress amended § 1221 in 1993 with the intent "to make it more difficult for debtors to obtain extensions." Collier, ¶ 1221.02[2] at 1221-2 (3d ed. 1999). Thus, when a debtor fails to timely file a plan under § 1221 and fails to demonstrate circumstances beyond its control to support an extension of the statutory 90-day period, the court may dismiss the case for cause. See 11 U.S.C. § 1208(c)(3); see also In re Braxton, 121 B.R. 632, 634 (Bankr. N.D. Fla. 1990).

The Debtors have not demonstrated "circumstances for which [they] should not justly be held accountable" or, in other words, circumstances beyond their control that prevent the time timely filing of a plan and justify an extension of the original plan due date of May 2, 2013. The Debtors' request for an extension in this case is based on their failure and/or refusal to communicate with their attorney, their failure and/or refusal to provide their attorney with documents necessary for the preparation of pleadings (including a plan), and their failure and/or refusal to cooperate in the timely prosecution of their case. Thus, not only have the Debtors failed to identify circumstances beyond their control that justify an extension of the plan deadline but, by their own admission, the circumstances upon which the Debtors' request is based are entirely *within* the Debtors' control. In other words, it is the Debtors' own deliberate conduct that has caused the purported need for an extension of the § 1221 plan filing deadline. Therefore, not only should the Debtors' request for an extension be denied, but, because the Debtors have not demonstrated any basis upon which the court may extend the 90-day period of § 1221 this case should be dismissed pursuant to § 1208(c)(3).

B.    <u>Dismissal is Alternatively Warranted Based on the Debtors' Prejudicial Delay</u>.

As an alternative to dismissal under §§ 1208(c)(3) and 1221, § 1208(c)(1) also allows the court to dismiss a Chapter 12 case based on "unreasonable delay ... by the debtor that is prejudicial to creditors[.]" 11 U.S.C. § 1208(c)(1).  By the time the Extension Motion is heard on May 21, 2013, nearly three months since the Debtors were directed by the Trustee to produce tax returns and substantially amend their schedules will have passed.  In that time, the Debtors have not complied with the Trustee's directive in that they have made absolutely no effort to produce tax returns, further identify all leases to which they are a party, or identify the personal property they own individually and that is owned by their LLC.  Failure to provide the Trustee with required financial information can be grounds for dismissal.  <u>In re Weber</u>, 297 B.R. 567, 572 (Bankr. N.D. Iowa 2003) (citations omitted).

Additionally, the delay in the timely prosecution of this case caused by the Debtors' failure to comply with the Trustee's directive and their failure and/or refusal to cooperate with their attorney is prejudicial in that it undermines the purpose of Chapter 12, which is to provide expedited resolution of family farmer debts, by allowing the Debtors to languish in this case without regard to plan filing and confirmation deadlines and without demonstrating any basis for relief from those deadlines.  See <u>Weber</u>, 297 B.R. at 572 (citing <u>In re Barger</u>, 233 B.R. 80, 85 (8th Cir. BAP 1999)).  The Debtors' delay is also inherently unreasonable in that it is a direct result of their own deliberate conduct.  Dismissal on this alternative basis is therefore warranted.

**III.    CONCLUSION**

Based on the foregoing, the Extension Motion should be denied and this case should be dismissed.

AUPIN, COX & LeGOY
ATTORNEYS AT LAW
P.O. BOX 30000
RENO, NEVADA 89520
(775) 827-2000

1

DATED this 6th day of May, 2013.

2

MAUPIN, COX & LEGOY

3

4

By  /s/ Christopher D. Jaime

5
    Christopher D. Jaime, Esq., #4640

6
Attorneys for Creditor Milton M. Dambacher

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE

I certify under penalty of perjury that I am an employee of MAUPIN, COX & LeGOY, Attorneys at Law, and that on the date indicated below, I served the foregoing document(s) described as follows:

**OPPOSITION OF MILTON M. DAMBACHER TO DEBTORS'
MOTION TO EXTEND TIME FOR FILING CH. 12 PLAN PURSUANT
TO 11 U.S.C. § 1221; REQUEST FOR DISMISSAL**

on the party(s) set forth below by:

_____          Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage paid, following ordinary business practices, addressed as follows:

__XXX__          Electronic filing via the U.S. Bankruptcy Court CM/ECF filing system, to all those persons listed on the United States Bankruptcy Court ECF Confirmation Sheet.

DATED this 6th day of May, 2013.


                                 _/s/ Karen Bernhardt_
                                 Employee

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

# COPY

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEVADA — NORTHERN DISTRICT

1

2

3

4  | IN RE:                              Case No. BK-13-50194-BTB

5  | PATRICK MCCAULEY,                   Reno, Nevada
   | dba GC LIVESTOCK, LLC;              March 1, 2013
6  | PATRICIA MCCAULEY,                  10:30 a.m.

7  |          Debtors.
   |  _____/
8

9  |              § 341 MEETING OF CREDITORS
   |              TRANSCRIPT OF PROCEEDINGS
10 |                 JAN P. JOHNSON
   |       OFFICE OF THE UNITED STATES TRUSTEE
11

12

13 | APPEARANCES:

14 | For the Debtors:              Nathan R. Zeltzer, Esq.
   |                               Law Offices of Nathan R. Zeltzer
15 |                               333 Marsh Avenue, Suite 1
   |                               Reno, NV 89509
16

17 | For Creditor Milton M.        Christopher D. Jaime, Esq.
   | Dambacher:                    Maupin, Cox & LeGoy
18 |                               4785 Caughlin Parkway
   |                               Reno, NV 89519
19

20 | Also Present:                 Patrick J. McCauley, Debtor
   |                               Patricia L. McCauley, Debtor
21

22

23

24 | Transcribed by:               Janyce Rossall

25 | Proceedings recorded by electronic sound recording, transcript
   | produced by Letter Perfect.

*Letter Perfect*
*P.O. Box 2185*
*Reno, NV 89505*
*775/358-8973*

# *CERTIFIED COPY*

2

1        The following transcript was prepared from an

2    electronic recording on CD provided by Christopher D. Jaime,

3    Esq., which CD was labeled "3-1-13 McAuley (sic) 13-50194 Copy"

4    and contained the proceedings.  Every effort was made to provide

5    a complete and correct transcript; however, in instances where

6    transcription was not possible due to simultaneous speech, poor

7    audio quality, or inaudible voices, the notation [UNINTELLIGIBLE]

8    was inserted.

9            *******************************************

10                       RENO, NEVADA

11                   FRIDAY, MARCH 1, 2013

12                          -oOo-

13        MR. JOHNSON:  All right.  This is -- These are meetings

14    of creditors for Chapter 12 in Reno, Case No. 13-50194.  I

15    believe it's Patrick and Patricia McCauley.

16        MR. MCCAULEY:  Yes.

17        MR. JOHNSON:  And I will need to see your proofs of ID

18    and proofs of Social if you've got them with you.

19        Thank you.

20        MS. MCCAULEY:  You're welcome.  My next stop today is

21    to get my -- try to get a duplicate of my original.

22        MR. JOHNSON:  Okay.  This one has your --

23        MS. MCCAULEY:  That's my maiden name.

24        MR. JOHNSON:  Right.

25        MS. MCCAULEY:  If that helps any.

14

1       MR. ZELTZER:  But we didn't get into the other portions

2  of the proceeds that you receive as far as rental proceeds on

3  the -- Which just helps your case.  It's all right, so it's not a

4  problem.

5       MS. MCCAULEY:  We just want to have it right.

6       MR. ZELTZER:  No, don't worry about that.

7       MR. JOHNSON:  That's in your favor at this time.

8       Yeah, I think Kristin Cuhan, the staff attorney from my

9  office, talked to you about getting profits and losses --

10      MR. ZELTZER:  Yeah.  And I explained that they are --

11      MR. JOHNSON:  -- and tax returns.

12      MR. ZELTZER:  They are just coming.  You know, they

13  have to transfer from California to Nevada and they are getting

14  these things all together.  Plus, I think their accountant had

15  some personal family problems they're just telling me about which

16  has made it more difficult.  But they think they're gonna get the

17  tax returns back today or tomorrow or Monday.

18      MR. JOHNSON:  Did you file the last four years of

19  taxes?

20      MR. MCCAULEY:  Three.

21      MR. JOHNSON:  The last three years you filed?

22      MR. MCCAULEY:  No.

23      MS. MCCAULEY:  That's what the accountant's working on.

24      MR. MCCAULEY:  Nine, '10, and '11.

25      MR. ZELTZER:  What happened -- So, they're doing '09,

24

1              MR. MCCAULEY:  Yes.  There's irrigation equipment,

2   pumps --

3              MR. JAIME:  That's not --

4              MR. MCCAULEY:  -- there's some equipment --

5              MR. JAIME:  That's not in the schedules, is it?

6              MR. JOHNSON:  I didn't see it.  Should -- There were

7   something there, but that could be --

8              MR. JAIME:  I think you have livestock, you have the

9   Dodge --

10             MR. ZELTZER:  Then we have the LLC.  I'm not sure.

11  Does that property belong to the LLC?

12             MR. MCCAULEY:  Well, the -- the equipment that's on the

13  ranch, goes with the ranch.  The irrigation system, all of that

14  is just part of it.

15             MR. JAIME:  Who owns it?

16             MR. MCCAULEY:  The ranch.

17             MR. JAIME:  No.  Who owns the -- Who owns the

18  equipment?

19             MR. MCCAULEY:  We do.

20             MR. ZELTZER:  Yeah.  Actually, I put that in the -- in

21  the Schedule B.  It's GC Livestock, in Modoc County.  So, I

22  wasn't sure, exactly, if that property owned it.  But he did make

23  aware -- make me aware that there's property on the property, the

24  ranch.

25             MR. JOHNSON:  So, that thirty thousand dollars is,

25

1   really, the value of -- it also includes value of the -- of

2   whatever is on the --

3            MR. ZELTZER:  I believe so.

4            MR. JOHNSON:   -- equipment is there also.

5            MR. ZELTZER:  Or that is the property here in Nevada?

6   Did you say Nevada?  You're living here.

7            MR. MCCAULEY:  You know, I don't even remember what's

8   there.  But, you know, I know we've got, like, the sprinkler

9   system, the irrigation system, and all that is listed and that's

10  part of the property.  As far as the equipment, it's --

11           MR. JAIME:  So, is the -- Is the equipment and the

12  irrigation equipment owned by you, individually, or is it owned

13  by the LLC?

14           MR. MCCAULEY:  What's there is owned by us, personally.

15           MR. JAIME:  What's there, meaning what's on the ranch,

16  is owned by you personally?

17           MR. MCCAULEY:  Right.  Yes.

18           MR. JAIME:  Okay.  And that's --

19           MR. MCCAULEY:  A lot of it come with the ranch.

20           MR. JAIME:  That's what's not -- what isn't listed in

21  here is personal property.

22           MR. ZELTZER:  Personal property, yeah, on the ranch, is

23  not listed, no.

24           MR. JAIME:  And those irrigation systems --

25           MR. ZELTZER:  Well, it was confusion in the sense

26

1  because I listed that there's property in Modoc County, but

2  that's not owned by the LLC, it's owned by him, personally.

3          MR. MCCAULEY:  Right.

4          MR. JAIME:  Do you have any idea what -- what the

5  irrigation system might be worth?

6          MR. MCCAULEY:  No, not really.

7          MR. JAIME:  Anything else in addition to the irrigation

8  system?

9          MR. MCCAULEY:  Oh, there's some equipment there.  It

10 doesn't have a lot of value, it's just old equipment.  I don't

11 know.

12         MR. JAIME:  You don't know?

13         MR. MCCAULEY:  No.

14         MR. JAIME:  Are you gonna list that?

15         MR. ZELTZER:  I'll amend it.  I mean, that's fine.  I'd

16 probably want them to give a more detailed list.

17         MR. JAIME:  Right.

18         MR. ZELTZER:  And get a better idea as to what may

19 [UNINTELLIGIBLE] he can go out there.

20         MR. MCCAULEY:  I think -- Isn't it on the depreciation

21 schedule?  The stuff that we bought for the ranch and what's

22 there.  Patricia?

23         MS. MCCAULEY:  Well, I'd have to look.

24         MR. MCCAULEY:  I'm pretty sure it is.

25         MR. ZELTZER:  Well, I mean, you can get that.  When we

27

1   get the taxes you'll see what's on there.

2           MR. JOHNSON:  Right.  Yeah, because I haven't seen a

3   copy of that yet.

4           MR. MCCAULEY:  It isn't filed yet.

5           MR. ZELTZER:  We're preparing it.  So, we'll get the

6   paperwork together, but it is what it is, and what's there is

7   their property that's on the ranch.

8           MR. JAIME:  I'd like to get a copy of his tax return,

9   too.  I'm entitled to that.

10          MR. ZELTZER:  Yeah.  That's fine.

11          MR. JAIME:  Okay.

12          MR. MCCAULEY:  We're -- we're gonna be going down for

13  Easter.  And Patricia and I talked about it.  But, if you talk to

14  Gary, I'd like to get a meeting together between us, our attorney

15  in Merced, and them, somewhere shortly before Easter.

16          MR. JAIME:  Who's your attorney in Merced?

17          MR. MCCAULEY:  Buzz Mattis, Weldon Mattis.

18          MR. JOHNSON:  And I did have one question.  I just want

19  to make sure everyone agrees that -- Do we all agree that the

20  McCauleys qualify under Chapter 12 because of their income and --

21  and debt?

22          MR. JAIME:  I'd like to look at that further.

23          MR. JOHNSON:  Okay.

24          MR. ZELTZER:  I agree, since I filed the case as a 12,

25  you know, I don't think there's any question they're farmers.

28

1   But --

2           MR. JOHNSON:  Right.

3           MR. JAIME:  I would tend to agree, but I don't want to

4   commit and I don't want to concede at this point.

5           MR. JOHNSON:  Yeah.  But at this point it would appear

6   to me that all their income is from the -- the operation of the

7   farm.  And it looks like most of the debt is associated with GC

8   Livestock and the farm.  So --

9           MR. ZELTZER:  And they're gonna be deriving income here

10  from the operations here, too.

11          MR. MCCAULEY:  Right.

12          MR. ZELTZER:  That's what their intentions are.  They

13  are farmers.

14          MR. JOHNSON:  When you say their "operations here,"

15  what do you mean by that?

16          MR. ZELTZER:  Well, I think they're in the process of

17  trying to get this other sheep -- As he just mentioned before, he

18  has some sheep that he's herding.  They have them at operations

19  here in Nevada, outside Eureka, Nevada.  But it's just in the

20  initial stages of getting it up and going.  So, I don't know.

21  They -- they -- We didn't have a lot of time to go over this when

22  we filed this case, and, so, if you want a little more

23  information, they're here.  So, you could --

24          MR. JOHNSON:  What -- what does exist in the Nevada

25  operations so far?

29

1          MR. MCCAULEY:  Well, we had a lease on a place in Elko
2  that we're gonna let go, a cow lease.

3          MR. JOHNSON:  And what was the lease for?

4          MR. MCCAULEY:  Pasture land.

5          MR. JOHNSON:  How much of it?

6          MR. MCCAULEY:  I think the whole ranch is about
7  fourteen hundred.

8          MR. JAIME:  Is that a current lease?

9          MR. MCCAULEY:  Well, yeah, but it's gonna be up at the
10  end of the month.

11          MR. JAIME:  Is it month to month?

12          I'm sorry.

13          MR. JOHNSON:  No, go ahead.

14          MR. JAIME:  Is it month to month or is it --

15          MR. MCCAULEY:  No, it's yearly.

16          MR. JAIME:  Yearly.  When -- when did you enter into
17  it?

18          MR. MCCAULEY:  Eleven months ago.

19          MR. JOHNSON:  So, it will be up at the end of March?

20          MR. MCCAULEY:  Um-hmm.  Most of those leases go from
21  April to April.

22          MR. JAIME:  Is that the only one?

23          MR. MCCAULEY:  We've got another one in Eureka, just a
24  pasture.

25          MR. JAIME:  Same term?

30

1          MR. MCCAULEY:  Yes.

2          MR. JOHNSON:  And -- and are they being used for

3   anything right now, the Eureka one?

4          MR. MCCAULEY:  Yeah, we've got some sheep on that.

5          MR. JAIME:  Do you owe anything under those leases

6   or --

7          MR. MCCAULEY:  No.

8          MR. JAIME:  How are -- How are you paying -- What are

9   the payments you owe?

10          MR. MCCAULEY:  From income from the ranch.

11          MR. JAIME:  And they're current?  They're not in

12   default?

13          MR. MCCAULEY:  No.

14          MR. JOHNSON:  How much -- What's the value of the

15   livestock you have now, as far as the -- the sheep go?

16          MR. MCCAULEY:  Probably fifty thousand.

17          MR. JOHNSON:  You probably need to include that in the

18   schedules, too.

19          MR. ZELTZER:  Okay.  Yeah.

20          MR. JOHNSON:  On the Alexander Dairy operation, do they

21   have milking equipment there also?

22          MR. MCCAULEY:  No.

23          MR. JOHNSON:  That's off site?

24          MR. MCCAULEY:  Yeah.  Their -- their dairy is on the

25   coast of California.

*Letter Perfect*
*P.O. Box 2185*
*Reno, NV 89505*
*775/358-8973*

1    MR. JOHNSON:  But, you say it is used for hay.  And is

2  there some pasturing of the livestock then?

3    MR. MCCAULEY:  Yes.  I think there's about a hundred-

4  some acres of pasture.  Three hundred acres of hay, more or less.

5    MR. JOHNSON:  Okay.  Yeah.  I didn't see an expense for

6  the -- for the leases.

7    MR. ZELTZER:  No.  Yeah, that's something we didn't get

8  into.  I will amend to put that in there.

9    MR. JOHNSON:  I realize one of them's gonna end at the

10  end of this month, but it appears that the Eureka one where the

11  sheep are will probably need to be included.  It's gonna have to

12  be offset by income, also.

13    MR. MCCAULEY:  That -- that lease was paid off the

14  income from the Elko lease, the trade.  Does that make sense?

15    MR. JOHNSON:  No.

16    MR. MCCAULEY:  Well, we got sheep, another guy had

17  cows, so he took our cow lease and we put our sheep --

18    MR. JOHNSON:  Okay.

19    MR. MCCAULEY:  -- on his lease.

20    MR. JOHNSON:  I see.  Okay.

21    MR. ZELTZER:  And that one's coming to an end, right?

22    MR. MCCAULEY:  Right.

23    MR. ZELTZER:  I'm not -- I don't know if there's any

24  need to add to that, but the one in Eureka, I will.

25    MR. JAIME:  Is -- Do you plan to renew it?

35

1    MR. JOHNSON:  Okay.  Okay.

2         On the things that I see that immediately jump out at

3    me they need to get, there's a couple disclosures that need to be

4    made and -- and schedules that need to be amended for the Eureka

5    pasture lease, the sheep, the livestock, the values on those.

6    And even though the -- the leases are -- are running out, their

7    term is running out at the end of this month, they were still in

8    existence at the time of filing, so I think you need to make sure

9    you do list all of those leases that were there.  And the

10   equipment that belongs to them personally probably should be

11   split out from the LLC equipment and listed on Schedule B as

12   personal property.

13        Yeah, there is that section on the plan that basically

14   says which leases are being rejected and which are being assumed,

15   so you need to make sure you -- you appropriately address them

16   there also.

17        MR. MCCAULEY:  What is that?

18        MR. ZELTZER:  That's one we haven't done yet.

19        MR. JOHNSON:  Yeah, it's not due yet.  It's not due

20   until May.

21        MR. MCCAULEY:  What is it?

22        MR. JOHNSON:  It's just, basically, it's part of your

23   Chapter 12 plan where it lists the executory contracts and leases

24   that you have at the time of filing, and whether your intent is

25   to assume those leases or reject the leases.

*Letter Perfect*
*P.O. Box 2185*
*Reno, NV 89505*
*775/358-8973*

38

STATE OF NEVADA,        )
                        )ss.
COUNTY OF WASHOE.       )

     I, Janyce Rossall, do hereby certify:

     That on Friday, March 1, 2013, a § 341 Meeting of Creditors was held in the above-entitled matter at the United States Bankruptcy Court, District of Nevada, Northern District, Reno, Nevada;

     That said proceeding was recorded electronically, and a CD containing the recording was delivered to Letter Perfect for transcription;

     That the foregoing transcript, consisting of pages 1 through 37, is a full, true, and correct transcript of said electronically-recorded proceedings identified above, performed to the best of my knowledge, skill, and ability.

     Dated at Reno, Nevada, this 2nd day of May, 2013.

Janyce Rossall, Owner

*Letter Perfect*
*P.O. Box 2185*
*Reno, NV 89505*
*775/358-8973*

# EXHIBIT 2

# EXHIBIT 2

# EXHIBIT 2

LAW OFFICE OF NATHAN R. ZELTZER                    ECF filed on: 4/16/2012
Nathan R. Zeltzer, Esq, SBN 5173
12 W. Taylor St.
Reno, Nevada 89509
(775) 786-9993

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

* * *

In re                                              Case No.: BK-13-50194-BTB
PATRICK J. MCCAULEY,                               Chapter 12
dba GC LIVESTOCK, LLC,
PATRICIA L. MCCAULEY,
                                                   Hearing Date:  January 16, 2013
            Debtor,                                Hearing Time: 10:00 A.M.
_____/                 Time Required: 5 Mins.

## MOTION TO ALLOW WITHDRAWAL OF COUNSEL

COMES NOW, Attorney, Nathan R. Zeltzer, for Debtor (hereinafter "Attorney"), Patrick & Patricia

McCauley, (hereinafter "Debtors"), and moves this Court for an Order to Allow Withdrawal as Counsel of

Record in connection with this case. The reasons for this motion are fully set forth below. The Debtors filed

their Chapter 12 Bankruptcy petition on January 31, 2013. There is a breakdown in communications between

Debtors' and Applicant. Due to this situation it has become impossible for Applicant to continue to represent

Debtors' in this case.

## LAW AND ARGUMENT

This Motion is made pursuant to Federal District of Nevada LR 1A 10-6(b) and 10-7, and Nevada

Supreme Court Rule 166(2)(c) and (e). The above rules allow counsel for a party in this Court to withdraw in

certain instances. It appears that the facts of this case meet the criteria under the above authority.

Applicant has requested certain documents from Debtors' over the past 75 days, and as of this date they

have not been provided. These are necessary to properly represent the Debtors' in this matter.

1

1  There are necessary and required pleadings that need to be filed in this case, but without the documents it

2  would be impossible to file the pleadings.  Without these documents it makes it impossible for Applicant to

3  represent Debtors' in their case.  Without Debtors' cooperation in providing these materials it is impossible to

4  properly continue representing the Debtors' in this case.

5

6  Upon consideration of the above information, the Debtors should be substituted in as their own Attorney

7  Pro Se.  It is impossible for undersigned counsel to maintain his duties to this client, and to the Court under

8  these circumstances.  Thus, Movant has the authority to withdraw as attorney of record upon approval of this

9  Court, see Nevada Supreme Court Rule 46(2).

10

**CONCLUSION AND PRAYER**

11

12  The Debtors' having failed to provide the requested information in their case, and it being impossible to

13  continue representing the Debtors' in this matter due to this fact, it is requested that Counsel be allowed to

14  withdraw from Debtors' case as the attorney of record and have the Debtor substituted in place as Counsel Pro

15  Se.

16  Dated:  April 15, 2013                              Respectfully Submitted,

17

18                                                                /s/ Nathan R. Zeltzer
                                                                  Nathan R. Zeltzer, Esq.
19

20

21

22

23

24

25

26

27

28

2