ALAN R. SMITH, ESQ.
Nevada Bar No. 1449
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada 89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
*Email: mail@asmithlaw.com*

Counsel for Debtor

*ELECTRONICALLY FILED*
*September 2, 2011*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

## LAS VEGAS DIVISION

—ooOoo—

In Re:

INTEGRATED FINANCIAL
ASSOCIATES, INC., a Nevada
Corporation

      Debtor.

_____/

Case No. BK-11-13537-LBR
Chapter 11

**MOTION TO APPROVE
SALE OF ASSETS TO
BRYTAR COMPANY**

Hearing Date:    [OST Pending]
Hearing Time:    [OST Pending]

     Debtor, INTEGRATED FINANCIAL ASSOCIATES, INC., a Nevada

corporation, by and through its counsel, Alan R. Smith, Esq., of the Law Offices of Alan

R. Smith, hereby moves this Court for an order authorizing the sale of its fractionalized

interest in a certain secured promissory Note as described below, and otherwise

determining that said sale is in the ordinary course of Debtor's business. This motion is

based upon 11 U.S.C. §363, the points and authorities set forth below, the declaration of

William Dyer filed in support hereof, the pleadings and papers on file herein, and such

other matters as may be presented at the oral hearing hereon. To the extent this motion

references factual information, that information is set forth in the Declaration of William

Dyer in support of Motion To Approve Sale Of Assets To Brytar Company (the "Dyer

Declaration"), which is hereby incorporated by reference herein.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Mot Sale (v3) 090211-kmb.wpd

**POINTS AND AUTHORITIES**

1.    **Description Of Asset To Be Sold.**

The Debtor holds a 16.44% fractional interest in a promissory note (the "Note") wherein the borrower is 1835 Nevassee Investments, LLC, a Nevada limited liability company (hereinafter "Nevassee"). The Debtor is a participant in the Note with seven additional fractional interest holders. The original principal balance of the Note was the amount of $675,000.00, and the current principal balance owing, including interest and default interest through September 1, 2011, is the sum of $1,068,717.00. A copy of the Note is attached hereto as **Exhibit "A"** and incorporated by reference herein.

The Note is secured by a deed of trust of even date therewith, a copy of which is attached hereto as **Exhibit "B."** The property securing the obligation consists of a 79,830 square foot, four story office building located in Memphis, Tennessee. The Debtor has an agreement with the various other participants in the loan to service the loan for a fee. Attached hereto as **Exhibit "C"** is a sample servicing agreement between the Debtor and the various loan participants. The servicing agreement is identical for each loan participant on this Note. The Debtor is owed outstanding servicing fees in the amount of approximately $9,325.00 as of the date of this Motion.

As servicing agent, the Debtor commenced foreclosure upon the property on April 6, 2010. On April 30, 2010, the borrower filed a Chapter 11 bankruptcy case in the U.S. Bankruptcy Court, District of Nevada, Case No. 10-17864-mkn. The Debtor filed a Motion for Relief from Automatic Stay, which was served on May 6, 2011. At the hearing on June 1, 2011, the borrower stipulated to relief from stay and the court entered its order granted relief from the automatic stay on June 14, 2011. In connection with the hearing, the Debtor obtained an appraisal of the property indicating the fair market value of approximately $945,000.00, however the appraiser indicated that in order to make the building competitive any potential buyer would have to spend approximately $2.5M to upgrade the operating systems. The Debtor has received the proposal to purchase the Note from a local Memphis businessman who has familiarity with the property. The

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Mot Sale (v3) 090211-kmb.wpd          - 2 -

Debtor believes it is in the best interest of its estate to accept the offer, as more specifically set forth below.

### 2. Description Of Terms Of The Sale.

The Debtor has negotiated a sale of the Note to Brytar Company, a Texas limited liability company (hereinafter "Purchaser") for the sum of $650,000.00. A copy of the Note Purchase and Sale Agreement is attached hereto as **Exhibit "D"** and is incorporated by reference herein (the "Purchase Agreement"). The Purchase Agreement provides for a $25,000.00 deposit following its execution, which has been received by the Debtor and placed in escrow. The Purchase Agreement also provides that escrow shall close 15 days following Bankruptcy Court Approval, and that Bankruptcy Court Approval must be obtained within 60 days of the effective date, which the deadline is September 18, 2011. The Purchaser has no relationship with the Debtor, and is an independent third party. The Purchaser was located by Michael Hewgley, Esq., who has represented the Debtor in connection with the pending foreclosure sale on the property. The Purchaser was located through a reference from another attorney in Memphis.

Pursuant to the terms of the sale, the Debtor will receive outstanding servicing fees in the amount of $9,325.00, together with its participation interest in the Note in the amount of $90,123.00. The sale provides that the purchase price be paid in cash at the close of escrow. Under Section 4.3 of the purchase agreement, the Purchaser shall pay all costs associated with the escrow agent to consummate the purchase.

### 3. Overbidding on the Note Not Allowed.

Because the Debtor has a minority fractional interest in the Note, the Debtor by itself does not have the ability to effectuate the sale of the Note without the other participation interests. Pursuant to NRS §645B.340, any sale of the Note requires a majority in dollar amount interest to vote in favor of the same. Accordingly, overbidding cannot be allowed on this sale. The Note already has a majority vote in favor of the sale, even if the Debtor's interest is not counted. However, because this is an asset of the Debtor, approval of the Bankruptcy Court must be sought as a condition of the sale. The

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Mot Sale (v3) 090211-kmb.wpd

- 3 -

1  Debtor does not have the ability to simply sell it's minority participation interest because

2  the Debtor, as servicer of the loan, has the duty to take such action as is in the best

3  interest of all of the participants according to their majority vote.

4     **4.**  **Marketing Efforts And Valuation.**

5     In this case, the asset being sold is a secured note in which the Debtor holds a

6  minority fractional interest.  The valuation of a minority interest in a secured note held by

7  multiple parties is a difficult process.  The Debtor considered various factors in

8  determining that the proposed sale is for fair value.  Factors generally considered are

9  value of the collateral securing the Note, the strength of the borrower, and the

10  marketability of the property in light of the general availability of purchasers.  In this

11  case, the property that secures the Note is described as a Class C office building that is

12  30% occupied, owned by 1835 Nevassee Investments, LLC, an entity that has been in

13  Chapter 11 bankruptcy since April 2010 (NV Bankruptcy Case No. 10-17864-mkn).  The

14  Debtor obtained relief from the automatic stay on June 14, 2011, and an assignment of all

15  cash collateral at a separate hearing on July 25, 2011.  Rather than conduct a foreclosure

16  sale, the Debtor has negotiated the sale of the Note, thereby eliminating the necessity of

17  paying delinquent property taxes (approximately $100,000.00), transfer taxes, broker fees

18  and closing costs, as well as uncertainty as to whether the property could actually sell.

19  The market for this type of property and this location is soft, primarily due to the lack of

20  financing, the flood on the market of similar properties, and the functional obsolescence

21  of the building.  The guarantor on the Note, Douglas DaSilva, has been investigated by

22  the Debtor, and based upon the Debtor's investigation has no assets, having received a

23  discharge in his personal Chapter 7 bankruptcy on September 23, 2010 (NV Bankruptcy

24  Case No. 10-19853-btb).  There are no other guarantors of the Note.  Finally, there is a no

25  real market for the sale of Notes at close to or equal to par value.

26     The Debtor obtained an appraisal in April 2011 from Integra Realty Resources that

27  indicated a market value for the property of $945,000.00.  However, the appraiser noted

28  that due to the functional obsolescence of the property and its location in Mid Town

**Law Offices of**
**ALAN R. SMITH**
**505 Ridge Street**
**Reno, Nevada  89501**
**(775) 786-4579**

H:\Integ Fin Assoc\Mot Sale (v3) 090211-kmb.wpd   - 4 -

1   Memphis, it would require a minimum of $2.5M in renovations to become a viable

2   property in this market.  Under the circumstances, with the sale price being nearly the

3   current balance owed on the Note, and the other Note investors not having any interest in

4   trying to foreclose on and subsequently market the property,  the Debtor feels that the

5   purchase price represents the fair market value of the Note.

6        **5.**     **<u>There Are No Lienholders Against The Property.</u>**

7        The Debtor's interest in the property has not been pledged or assigned to any

8   creditor, and the property is free of all liens.

9        **6.**     **<u>Use Of Proceeds.</u>**

10       The Debtor intends to deposit the proceeds into its debtor-in-possession account.

11  The proceeds will be used, to a certain extent, to fund Debtor's ongoing business

12  operations.  However, the Debtor is operating under a strict budget, and anticipates a

13  majority of the proceeds from the sale will be used to fund its plan of reorganization.

14       **7.**     **<u>Approval By Other Fractional Interests.</u>**

15       On April 26, 2011, the Debtor provided notice to the other fractional interest

16  holders of the proposed sale, a copy of which is attached hereto as **Exhibit "E."**  The

17  responses received by the Debtor indicated that 88.44% of the other fractional interest

18  holders voted in favor of the sale, and 11.56% did not vote.  No fractional interest holder

19  voted against the sale.

20       NRS §645B.340 provides:

21       "Except as otherwise provided by law or by agreement between the parties and
    regardless of the date the interests were created, if the beneficial interest in a loan

22  belongs to more than one natural person, the holders of 51 percent or more of the
    outstanding principal balance may act on behalf of all the holders of the beneficial

23  interests of record on matters which require the action of the holders of the
    beneficial interests in the loan, including..."

24

25  Although sale of the promissory note is not included in the list of items that may be

26  approved, the Debtor interprets the statute as requiring such vote in order to do so.

27  Accordingly, the appropriate procedures have been followed in order to obtain approval

28  for the sale as required under NRS §645B.340.  Since the Debtor only holds a minority

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Integ Fin Assoc\Mot Sale (v3) 090211-kmb.wpd    - 5 -

1    interest in the Note, the remaining fractional interest holders in the Note could vote in

2    favor of the sale and cause the same to occur without the Debtor's participation, even if

3    the Debtor voted against the sale. This issue is only pointed out for procedural

4    consideration, since, in this case, the Debtor does, in fact, support the sale.

5         **8.    Request For Finding That Sale Is In Good Faith.**

6         The Debtor requests a finding of the Court that the proposed sale has been entered

7    into in good faith, and that in consummating the sale the parties are acting in good faith.

8         **9.    The Sale Is In The Ordinary Course Of The Debtor's Business.**

9         Pursuant to Section 363(c)(1) of the Bankruptcy Code:

10        If the business of the debtor is authorized to be operated under Section 721,
         1108, 1203, 1204, or 1304 of this Title and unless the court orders
11        otherwise, the trustee may enter into transactions, including the sale or lease
         of property of the estate, in the ordinary course of business, without notice
12        or a hearing, and may use property of the estate in the ordinary course of
         business without notice or a hearing.
13

14   In this case, the Debtor's business was to originate and service various loans all of which

15   had multiple fractional interest participants. Pursuant to Nevada law, the Debtor has

16   authority to consummate a sale of the fractionalized Note provided the Debtor complied

17   with the procedures set forth in Section 645B.340 of the Nevada Revised Statutes.

18        Under its Loan Servicing Agreement, The Debtor is authorized to:

19        "Upon the commencement of a foreclosure, after polling the Participants as
         provided above, the Servicing Agent shall take such action or actions and institute
20        such legal and other proceedings as it deems necessary and appropriate to enforce
         the Loan Documents and collect the loan..."
21

22   Generally, it was and is the Debtor's duty to take whatever steps are necessary in order to

23   maximize the return for the fractionalize interest holders in the Note. In some instances,

24   such as the one that is the subject of this motion, the Debtor also holds a fractional

25   interest in the same Note that it services. The Debtor's fractional interest in notes that it

26   holds are generally minority interests, ranging from 1% to 25%.

27        In determining whether a proposed sale is in the ordinary course of business,

28   bankruptcy courts have employed two commonly used tests. The "horizontal dimension

1   test" requires the court to look at similar businesses to determine whether the proposed

2   transaction is one that would normally be entered into by a similar business. 3-363

3   *Collier on Bankruptcy* P 363.03[1][a].  *See also, In Re Dant & Russell, Inc.,* 853 F.2d 700

4   (9th Cir. 1988).  The purpose of the test is to determine whether the proposed transaction

5   is abnormal or unusual, or whether it is a reasonably common type of transaction.  The

6   transaction may be reasonably common even if it does not occur frequently, provided it is

7   an ordinary type of transaction within the business and industry. Id.  It is submitted that it

8   is normal for servicing companies such as the Debtor to take appropriate actions to collect

9   on debts that it services.  It is not unusual that such actions may include foreclosure upon

10  the property held as collateral, sale of the promissory note serviced by the Debtor, or sale

11  of the property that secured the promissory note following foreclosure.  These are the

12  activities within the normal course of a company servicing a loan.

13       The "vertical dimension test" views the transaction from the perspective of

14  creditors, asking whether the transaction is one that creditors would reasonably expect the

15  Debtor to enter into.  3-363 *Collier on Bankruptcy* P 363.03[1][b].  Essentially, under

16  this test consideration is given to the types of risks that creditors impliedly agreed to when

17  they extended credit to the Debtor, and determines whether or not the transaction is within

18  the range of risks expected by the creditors. Id; *In re*: Dant & Russell, Inc. *supra*; *In re*:

19  James A. Phillips, Inc. 29 B.R. 391 (Bankr. S.D.N.Y. 1983).  It is submitted that creditors

20  would reasonably expect the Debtor to take appropriate action as servicer in order to

21  maximize the return for the investors, as well as the Debtor's interests.  Creditors would

22  reasonably expect that the Debtor would enter into a transaction for the sale of the Note,

23  if that offered the best mechanism to maximize the return to the investors as well as the

24  Debtor.

25       Based upon the foregoing, Debtor requests that this Court approve the sale as in

26  the ordinary course of the Debtor's business.  As the Debtor has other minority interests

27  in notes which it seeks to sell, Debtor requests approval of the Court for such sales

28  without the necessity of filing a motion and having the matter heard on each occasion.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Integ Fin Assoc\Mot Sale (v3) 090211-kmb.wpd          - 7 -

10.    **The Sale Should Be Approved Even If Not In The Ordinary Course Of Business:**

Pursuant to Section 363(b)(1) of the Bankruptcy Code:

"The Trustee, after Notice and Hearing, may use, sell, or lease, other than the ordinary course of business, property of the estate..."

It is generally held that the standard for approving such a sale is a "business judgment test." 3-363 *Collier on Bankruptcy* P 363.02[4]. Under that test, the Bankruptcy Court reviews the Debtor's business judgment to determine independently whether the judgment is a reasonable one, and whether a sound business justification exists supporting the sale and its terms. Id.

In light of the facts set forth in this Motion, it is submitted in the proposed sale represents a sound business judgment on behalf of the Debtor, and a sound business justification exists supporting the sale and its terms.

11.    **Debtor Seeks Relief From F.R.B. 6004(h)**:

As a part of this sale, the Debtor seeks relief from Fed. R.Bankr.Pro. 6004(h), which provide for a stay of any sale order. Debtor requests that it be allowed to close escrow on this sale as soon as possible following entry of the order in order to comply with the provisions of the Purchase Agreement.

12.    **Conclusion:**

A majority of the other interest holders in the Note have approved the sale. Debtor has analyzed the value of its interest, and the advisability of the sale as set forth in this Motion. The sale represents fair value for the Debtor's interest. The Debtor first requests that the Court approve this sale as in the ordinary course of the Debtor's business, and establish a precedent for future sales similar to this one. In the alternative, Debtor requests approval of the sale pursuant to section 363(b) of the Bankruptcy Code, in that the sale is based upon the sound business judgment of the Debtor, and there is a sound business justification supporting the sale and its terms. Attached hereto as **Exhibit "F"** is a form of the proposed Order Approving Sale to Brytar Company.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada  89501
(775) 786-4579

H:\Integ Fin Assoc\Mot Sale (v3) 090211-kmb.wpd    - 8 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF ALAN R. SMITH


By:_____/s/ Alan R. Smith_____
          ALAN R. SMITH, ESQ.
          Counsel for Debtor

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Mot Sale (v3) 090211-kmb.wpd                    - 9 -

# Exhibit "A"

## PROMISSORY NOTE SECURED BY FIRST DEED OF TRUST

$675,000                                                        October 20th, 2006

The undersigned, 1835 Nevassee Investments, LLC, a Nevada limited liability company ("Borrower"), promises to pay to Integrated Financial Associates, Inc., a Nevada Corporation and its successors, assigns, or other holders hereof ("Lender"), or order, at Las Vegas, Nevada, or at such other place as Lender may from time to time designate in writing, in lawful money of the United States of America, the principal sum of Six Hundred Seventy-Five Thousand Dollars ($675,000), or so much thereof as may be advanced (the "Loan") pursuant to the terms of that certain Loan Agreement dated as of the same date as this Note between Lender and Borrower (the "Loan Agreement"), with interest from the dates of disbursement on the unpaid principal balance at the rate and on the terms set forth below.

1.      Stated Interest Rate. Except as otherwise provided in the following paragraphs of this Note, interest shall accrue on the unpaid principal balance outstanding at the rate of Thirteen percent (13%) per year ("Stated Interest Rate") based upon a 360-day year consisting of twelve (12) 30-day months.

2.      Payment Amount. Interest only in the sum of $7,312.50 shall be paid monthly to Lender on the first day of each month beginning on the first day of the next month after Close of Escrow (e.g. if escrow closed on April 6, the first payment would be due May 1), with the first payment after Close of Escrow to be prorated based upon the number of days remaining in that month divided by 30.

3.      Due Date. Payments shall be made on a monthly basis for 12 months from the date of this Note, upon which date  the then remaining unpaid principal, accrued interest, if any, and all other sums due under this Note shall be paid in full ("Final Payment"). All payments including the Final Payment (both of which are hereafter referred to as payment) on this Note shall be applied first to costs described below, then accrued Interest, and the balance to principal.

4.      Security. This Note is secured by, among other things, a first Deed of Trust and Assignment of Rents and Security Agreement of even date herewith.

5.      Prepayment. Borrower may prepay the principal without incurring a penalty.

6.      Default Rate and Late Fee. If any payment, including the Final Payment, is more than five (5) days delinquent, a late fee of ten percent (10%) of the payment(s) shall be due for the administrative cost of involved in handling delinquent

1

payments. In the event any payment is more than five (5) days delinquent, interest shall then accrue on all of Borrower's obligations to Lender under this Note or other document related to this transaction at the rate the Stated Interest Rate plus 6% per year ("Default Interest Rate") until all obligations due under said documents are paid in full. If any payment is not paid pursuant to the terms of this Note, in addition to the late fee, such payment shall bear interest at the Default Interest Rate from the date said payment becomes due. Borrower acknowledges that the foregoing, and other provisions of this Note, shall result in compounding of interest and Borrower agrees thereto pursuant to the provisions of Nevada Revised Statutes 99.050. At no time shall the rate of interest charged in connection with the Loan exceed the legal rate of interest permitted to be charged by the Lender. In the event any law precludes Lender from charging the interest rate otherwise permitted hereunder the interest rate for the period during which such rate is unlawful shall be the highest rate permitted by law and any excessive interest paid shall be applied toward reduction of the outstanding principal balance.

7.  Default. Upon default, defined as a failure to pay or perform any obligation contained in the deed of trust or any obligation contained herein without regard to Borrower's obligation to pay a late fee, all amounts then unpaid under this Note shall bear interest from the date of default at the Default Interest Rate set forth herein, and all sums shall be immediately due and payable. Failure to make any payment of principal and interest, or either of them within 10 days of its due date, or to otherwise perform shall constitute a default and shall, without notice, at the option of the holder hereof, cause all of the unpaid principal of this Note, with interest accrued thereon and any other sums due under the Loan Agreement, Deed of Trust or other instruments to become immediately due and payable. Delay or failure to exercise said options shall not constitute a waiver of the right to exercise same at any time thereafter or in the event of any subsequent default.

8.  No Waiver by Lender . The acceptance of any payment hereunder which is less than payment of all amounts then due and payable shall not constitute a waiver of any of the rights or options of the Lender or to the exercise of those rights and options at the time of such acceptance or at any subsequent time.

9.  Waivers by Borrower.  Each maker or endorser jointly and severally and to the extent permitted by law  waives notice of intent to accelerate, demand, presentment for payment, protest and notice of protest, notice of dishonor, and non-payment of this Note and waives any and all lack of diligence , or delays in the collection or enforcement hereof. Borrower waives any right of setoff now or hereafter arising against obligations due the Lender.

10.  **IN THE EVENT THAT AN ACTION AT LAW IS COMMENCED TO ENFORCE ANY OF THE PROVISIONS OF THIS NOTE, THE BORROWER HEREBY**

2

**WAIVES ITS RIGHT TO A TRIAL BY JURY ON ANY TRIABLE ISSUE OF FACT.**

11.    Miscellaneous. In the event that suit is brought to enforce this Note or an attorney is employed by Lender or other expenses are incurred by Lender to compel payment of this Note or any portion of the indebtedness evidenced hereby or by the Loan Agreement, whether or not any suit or other proceeding be commenced, Borrower promises to pay all such expenses and actual attorneys' fees, including, without limitation, any attorneys' fees incurred in any negotiation, alternative dispute resolution proceeding subsequently agreed to by the parties, if any, litigation, or bankruptcy proceeding or any appeals from any of such proceedings. This Note shall be construed and enforced in accordance with the laws of the State of Nevada. Borrower agrees that Lender shall have all of the rights and remedies available to a creditor under the laws of the State of Nevada.

Borrower:

1835 Nevassee Investments, LLC

by
Douglas DaSilva, Managing Member

3

# Exhibit "B"



# *Tom Leatherwood*

## Shelby County Register

As evidenced by the instrument number shown below, this document has been recorded as a permanent record in the archives of the Office of the Shelby County Register.



```
        06181379
  11/07/2006  -  09:00  AM
28 PGS ; R - MORTGAGE
DAVEJ  447220-6181379
VALUE                    675000.00
MORTGAGE TAX                773.95
TRANSFER TAX                  0.00
RECORDING FEE               140.00
DP FEE                        2.00
REGISTER'S FEE                1.00
WALK THRU FEE                 0.00
TOTAL AMOUNT               916.95
       TOM LEATHERWOOD
  REGISTER OF DEEDS SHELBY COUNTY TENNESSEE
```

160 N. Main St., Suite 519 ~ Memphis, Tennessee 38103 ~ (901) 545-4366
http://register.shelby.tn.us

THIS INSTRUMENT PREPARED BY AND RETURN TO:

Integrated Financial Associates, Inc
2810 W. Charleston Blvd., Suite 77
Las Vegas, NV 89102

TAM TITLE & ESCROW, LLC
8130 COUNTRY VILLAGE DR.
STE 101
CORDOVA, TN 38016-2029

**MAXIMUM PRINCIPAL INDEBTEDNESS FOR TENNESSEE RECORDING TAX
PURPOSES IS $675,000.**

### DEED OF TRUST, SECURITY AGREEMENT and
### ASSIGNMENT OF RENTS AND LEASES

THIS INDENTURE is made and entered into on this 3ᵒᵘ day of _Oct_, 200/,
by and among 1835 Nevassee Investments, LLC, a Nevada limited liability company, whose
address is 1501 West Sahara Ave., Las vegas, NV 89102 party of the first part (hereinafter called
"Grantor"), Fidelity National Title Insurance Company, a resident of Shelby County, Tennessee,
party of the second part (hereinafter called "Trustee"), and Integrated Financial Associates, Inc.,
a Nevada corporation, party of the third part (hereinafter called "Bank" or "Beneficiary"). This
instrument covers property which is or may become so affixed to real property as to become
fixtures and also constitutes a fixture filing under §47-9-502 of Tennessee Code Annotated. This
Deed of Trust is for commercial purposes.

FOR AND IN CONSIDERATION OF FIVE DOLLARS ($5.00) cash in hand paid by the
Trustee to the Grantor, and the debt and trusts hereinafter mentioned, the said Grantor has
bargained and sold, and does hereby bargain, sell, convey and confirm unto the said Trustee all
of its right, title and interest in and to the real estate [said real property together with the
Improvements (hereinafter defined) being herein called the "Mortgaged Property"] situated and
being in Shelby County, Tennessee, more particularly described in Exhibit "A," attached hereto
and made a part hereof as fully and particularly as if set out herein verbatim, together with:

(A) All the improvements now on or which may be hereafter placed on said land during
the existence of this lien; and

(B) All the income, rents, issues and profits arising therefrom and for the use thereof; and

(C) All materials, equipment, furnishings or other property whatsoever owned by Grantor
and installed or to be installed and used in and about the building or buildings on said land,
including, but not being limited to, all heating, plumbing, lighting, water-heating, cooking,
refrigerating, incinerating, ventilating and air conditioning equipment, storm doors and windows,
shades, rugs, carpeting, awnings, blinds, drapes, and linoleum, and property of like nature, all of
which property and things are hereby declared to be permanent accessions to the freehold and part
of the realty conveyed herein as security for the Obligations (hereinafter defined) [the
property described in the foregoing clause (A) and this clause (C) being sometimes herein called
the "Improvements"]; and

1

(D) All leasehold estate, right, title and interest of Grantor in and to all leases and subleases covering the Mortgaged Property or any portion thereof now or hereafter existing or entered into, subject to the provisions of Section 3.1 hereof, including, without limitation, all cash or security deposits, advance rentals, guarantees and deposits of similar nature;

TO HAVE AND TO HOLD, the aforedescribed Mortgaged Property, together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said Trustee, his successors in trust and assigns, in fee simple forever; and the said Grantor does hereby covenant with the said Trustee, his successors in trust and assigns, that Grantor is lawfully seized in fee of the estate described in Exhibit "A" hereto attached, that Grantor has a good right to sell and convey the same; that the same is unencumbered except as set forth in Exhibit "B" hereto; and that the title and quiet possession thereto Grantor will and Grantor's successors shall warrant and forever defend against the lawful claims of all persons.

BUT THIS IS A TRUST DEED, and is made for the following uses and purposes, and none other, that is to say: Grantor is justly indebted to Bank or the holder of the note hereinafter mentioned (said Bank or such holder being hereinafter sometimes called the "Beneficiary"), in the principal sum of SIX HUNDRED SEVENTY-FIVE THOUSAND AND NO/100 DOLLARS ($675,000) evidenced by:

That certain promissory note ("Note") of even date herewith, in the principal amount of Six Hundred Seventy-Five Thousand and No /100 Dollars ($675,000) bearing interest from date until maturity at the rate specified in said Note, said principal and interest being payable monthly as provided in said Note, commencing November 1, 2006, to the order of the Bank, at the offices of the Bank, at 2810 W. Charleston Blvd., Suite 77, Las Vegas, NV 89102, or at such other place as the holder may designate in writing, being executed by the Grantor, and being given for value received, and maturing October 31, 2007 (said Note being incorporated herein by reference as fully and particularly as if set out herein verbatim).

Grantor desires to secure and make certain the payment of the indebtedness evidenced and to be evidenced by the Note, and any and all renewals, modifications and extensions thereof, in whole or in part and also the payment and performance of the other Obligations, as hereinafter defined.

NOW, THEREFORE, so long as any part of the Obligations shall remain unpaid or unperformed, Grantor covenants, agrees, represents and warrants as follows:

## ARTICLE I

## OBLIGATIONS DEFINED

The following obligations of the Grantor are hereinafter collectively called the "Obligations":

1.1 <u>Note</u>.  Payment of the indebtedness (and interest thereon) evidenced and to be evidenced by the Note, and of any and all renewals, modifications and extensions thereof, in whole or in part; and

1.2 <u>Deed of Trust</u>.  Payment of all sums advanced by Beneficiary to or for the benefit of Grantor contemplated hereby and performance of all obligations and covenants herein contained, including, without limitation, any amounts advanced to protect the trust estate and security interests herein granted and all attorneys' fees, court costs, and reasonable expenses of whatever kind incident thereto or to the collection of the indebtedness and obligations hereby secured and/or enforcement of the liens and security interests herein granted; and

1.3 <u>Loan Agreement</u>.  Performance of all covenants, obligations and undertakings arising pursuant to the Loan Agreement by and between Grantor and Beneficiary dated October 30, 2006 (the "Loan Agreement"), the terms of which are hereby incorporated by reference as if fully set forth herein; and

1.4 <u>Other Indebtedness</u>.  Payment of all other indebtedness of the Grantor arising under or in connection with this Deed of Trust, the Note, or any other instrument or document now or at any time evidencing, securing or guaranteeing the same (collectively the "Loan Documents").

## ARTICLE II

## COVENANTS AND AGREEMENTS AS TO MORTGAGED PROPERTY

Grantor does hereby covenant, warrant and represent to and agree with Beneficiary as follows:

2.1 <u>Payment and Performance</u>. Grantor shall make all payments on the indebtedness evidenced by the Note when due and shall punctually and properly perform all of Grantor's other Obligations.

2.2 <u>Insurance</u>. Grantor shall, at Grantor's sole cost and expense, obtain and maintain in some company or companies approved by Beneficiary:

(a) Comprehensive public liability insurance covering claims for bodily injury, death, and property damage, with such minimum limits as Beneficiary shall, from time to time, specify, but

in any event not less than those amounts customarily maintained by owners of substantially similar property; and

(b) If any of the Mortgaged Property is within an area designated as a "special flood hazard area" as defined in the Flood Disaster Protection Act of 1973, a Standard Flood Insurance Policy on the Mortgaged Property as required by the Act or in the amount of the Note, whichever is greater; and

(c) Hazard insurance upon the Improvements and tangible personal property, insuring against loss by fire and all other hazards covered by extended coverage and special extended coverage endorsements (including but not limited to loss by windstorm, hail, flood, earthquake, tornado, explosion, riot, aircraft, smoke, vandalism, malicious mischief and vehicle damage) as Beneficiary, in its sole discretion, shall from time to time require, all such insurance to be issued in such form, with such deductible provision, and for such amount (which shall, in any event be at least equal to the full replacement value of the Improvements) as shall be satisfactory to Beneficiary; and

(d) Such other insurance as the Beneficiary may, from time to time, reasonably require by notice in writing to the Grantor.

All required insurance policies shall provide for not less than thirty (30) days' prior written notice to the Beneficiary of any cancellation, termination, or material amendment thereto. Grantor will cause all policies of hazard insurance, to be payable to Beneficiary pursuant to a standard mortgagee clause acceptable to Beneficiary; and Grantor will cause all liability insurance policies to name Beneficiary as additional insured, if Beneficiary so requires. Grantor will deposit said policy or policies of insurance (or a copy of the policy and original insurance certificate if Beneficiary's insurance coverage is a part of a blanket policy) with the Beneficiary as further security for the Obligations, no responsibility for the approval or maintenance of any insurance (required to be maintained pursuant hereto) being imposed upon the Beneficiary or the Trustee. In the event of damage to or destruction of the Improvements and/or Personal Property by fire or other casualty, the net proceeds of the insurance shall be applied upon the Obligations in such manner as the Beneficiary may elect; or, at the option of the Beneficiary, such proceeds may be released to Grantor to be used to restore such property to its former condition. Any insurance policies furnished the Beneficiary shall become its property in the event the Beneficiary becomes the owner of the Mortgaged Property by foreclosure or otherwise. The Beneficiary is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies, and to collect and receive the proceeds from any such policy or policies relating to the Mortgaged Property.

2.3 Taxes and Assessments. Grantor will promptly pay when due all taxes, assessments, levies, dues and charges of every type or nature assessed against the Mortgaged Property or the Personal Property, and any claim, lien or encumbrance against the Mortgaged Property or the Personal Property which may be or become prior to the lien of this Deed of Trust. Grantor shall have the right before any delinquency occurs to contest or object to the amount or validity of any such taxes, assessments, etc. by appropriate legal proceedings; but this shall not be deemed or

construed in any way as relieving, modifying or extending Grantor's covenant to pay any such taxes, assessments, etc. at the time, unless Grantor as given prior written notice to Beneficiary of Grantor's intent to so contest or object to such taxes, assessments, etc., and unless at Beneficiary's sole option, (i) Grantor shall demonstrate to Beneficiary's satisfaction that the legal proceedings shall conclusively operate to prevent the sale of the Property, or any part thereof, to satisfy such Imposition prior to final determination of such proceedings; or (ii) Grantor shall furnish a good and sufficient bond or surety as requested by and satisfactory to Beneficiary; or (iii) Grantor shall have provided a good and sufficient undertaking as may be required or permitted by law to accomplish a stay of such proceedings.

2.4 <u>Deposit of Taxes and Insurance Premiums</u>. If requested by Beneficiary following an Event of Default, Grantor will deposit with the Beneficiary, monthly, on the first day of each month, one-twelfth (1/12) of the annual charges for ground or other rent, if any, insurance premiums and real estate taxes, assessments, water, sewer, and other charges which might become a lien upon the Mortgaged Property. In addition, if required by the Beneficiary following an Event of Default, the Grantor shall simultaneously therewith deposit with the Beneficiary a sum of money which, together with the monthly installments aforementioned, will be sufficient to make each of the payments aforementioned at least thirty (30) days prior to the date such payments are delinquent. Should said charges not be ascertainable at the time any deposit is required to be made with the Beneficiary, the deposit shall be made on the basis of an estimate made by the Beneficiary in its sole discretion; and when the charges are fixed for the then current year, the Grantor shall deposit any deficiency with the Beneficiary. All funds so deposited with the Beneficiary shall be held by it in escrow, but except to the extent required by applicable law, without interest, and, provided that no Event of Default (hereinafter defined) shall have occurred, shall be applied in payment of the charges aforementioned when and as payable, to the extent the Beneficiary shall have funds on hand. Upon the occurrence of any Event of Default, the funds deposited with the Beneficiary, as aforementioned, may be applied in payment of the charges for which such funds shall have been deposited, or to the payment of the Obligations, or upon any other charges affecting the security of the Beneficiary, as the Beneficiary sees fit, but no such application shall be deemed to have been made by operation of law or otherwise until actually made by the Beneficiary as herein provided, nor shall any application be deemed to affect any right or remedy of the Beneficiary hereunder or under any statute or rule of law. If deposits are being made with the Beneficiary, the Grantor shall furnish the Beneficiary with bills for the charges for which such deposits are required to be made hereunder and/or any other document necessary for the payment of same, not later than fifteen (15) days prior to the date upon which the charges first become payable. The enforceability of the covenants relating to taxes, assessments, and insurance premiums herein otherwise provided for shall not be affected except insofar as those obligations have been met by compliance with this paragraph. Beneficiary may, from time to time, at its option, waive, and after any such waiver reinstate and following an Event of Default, any or all of the provisions hereof requiring such deposits, by notice to Grantor in writing. While any such waiver is in effect, Grantor shall pay the taxes, assessments, insurance premiums, and other charges as herein provided.

2.5 <u>Taxes on Deed of Trust</u>. If at any time any law shall be enacted imposing or authorizing the imposition of any tax (other than an income or other similar tax assurance to

Lender) upon the Note, any of the Obligations, or this Deed of Trust, or upon any rights, titles, liens, or security interests created hereby, or any part thereof, Grantor shall immediately pay all such taxes; provided that, if it is unlawful for Grantor to pay such taxes, Beneficiary may pay such taxes and Grantor shall reimburse Beneficiary for such payment in full within ten (10) days after notice; provided, further, that if it shall be unlawful for Grantor either to pay such taxes or to reimburse Beneficiary therefor, or if such payment or reimbursement would be usurious, Grantor shall not be required to make such payment or reimbursement, but at Beneficiary's option, the Obligations shall thereupon be immediately due and payable.

2.6 <u>Eminent Domain</u>. Grantor hereby transfers, sets over, and assigns to Beneficiary all of its right, title and interest in and to judgments, awards of damages and settlements hereafter made as a result or in lieu of any taking of the Mortgaged Property or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Property or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets. Beneficiary is hereby authorized, but not required, in behalf and in the name of Grantor, to execute and deliver valid acquittances for, and to appeal from, any such judgments or awards. Beneficiary may apply all such sums or any part thereof so received, after the payment of all of its expenses, including costs and reasonable attorney's fees, on the Obligations secured hereby, whether due or not, in such manner as it elects or, at its option, the entire amount or any part thereof so received may be released to the Grantor or other party lawfully entitled thereto.

2.7 <u>Repair, Waste, Alterations, etc</u>. Grantor shall keep every part of the Mortgaged Property and the Personal Property in operating order, repair and condition and shall not commit or permit any removal or material waste thereof, normal wear and tear excepted. Grantor shall not remove or demolish or alter the design or structural character of any Improvements now or hereafter erected upon the Mortgaged Property without the prior written consent of Beneficiary provided, however, that consent to any material alteration shall not be unreasonably withheld. Grantor shall make promptly all necessary repairs, renewals and replacements to the Mortgaged Property and the Personal Property.

2.8 <u>Advances by Beneficiary to Protect Collateral</u>. If the Grantor shall default giving effect to any applicable notice, grace or cure periods under the Loan Documents in paying taxes, maintaining insurance or making repairs and upon the expiration of any cure periods provided herein, Beneficiary may, at its discretion, advance and pay such sums as may be proper to satisfy taxes, maintain insurance and make repairs, and protect and preserve the Mortgaged Property and Personal Property, and such amounts so paid shall be treated as part of the expense of administering this trust, shall be repaid by Grantor on demand with interest at the Default Rate (hereinafter defined), and shall be secured by the lien hereof. However, the making of any such payment by Beneficiary shall not be construed as a waiver of any default of Grantor.

2.9 <u>No Mechanics' Liens</u>. Grantor shall discharge all claims for labor performed and material furnished to the Mortgaged Property, and shall not suffer any lien of mechanics or materialmen to be filed against any part of the Mortgaged Property. Beneficiary has not consented and will not consent to any contract or to any work or to the furnishing of any

materials which might be deemed to create a lien or liens superior to the lien of this instrument, either under §66-11-108 of Tennessee Code Annotated, or otherwise. Grantor shall have the right to contest in good faith the validity of any such lien, encumbrance or charge, provided Grantor shall first post as provided by law a bond or other security satisfaction to Beneficiary in such amounts as Beneficiary shall reasonably require, not exceeding amounts required by pertinent bonding off statutes, plus costs, expenses, including attorney's fees, and interest, and provided further that, if suit to foreclose is filed, Grantor shall thereafter diligently proceed to cause such lien, encumbrance or charge to be removed and discharged, or bonded over in accordance with applicable law. If Grantor shall fail to discharge any such lien, encumbrance or charge, or provide such reasonable security, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond for the amount claimed or otherwise giving security for such claim, or in such manner as is or may be prescribed by law.

2.10 <u>Protection and Priority of Lien</u>. Grantor shall not do anything or suffer or permit anything to be done whereby the lien and security interest of this Deed of Trust could be impaired. Grantor shall pay such reasonable expenses and fees as may be necessary in the protection of the Mortgaged Property and Personal Property and the maintenance and execution of liens and security interests herein granted. Any agreement hereafter made by Grantor and Beneficiary pursuant to or regarding this Deed of Trust shall be superior to the rights of the holder of any intervening lien or encumbrance.

2.11 <u>Compliance with Laws</u>. Grantor, the Mortgaged Property, the Personal Property, and the use thereof by Grantor shall comply in all material respects with all laws, rules, ordinances, regulations, covenants, conditions, restrictions, orders and decrees of any governmental authority or court applicable to Grantor or the Mortgaged Property and its use; Grantor will not suffer or permit any violation thereof; and Grantor shall pay all fees or charges of any kind in connection therewith.

2.12 <u>Further Assurances</u>. Grantor, upon the reasonable request of Beneficiary, shall execute, acknowledge, deliver, and record such further instruments and do such further acts as may be necessary, desirable or proper to carry out the purposes of this instrument and the other Loan Documents and to subject to the liens and security interests created thereby any property intended by the terms thereof to be covered thereby, including specifically but without limitation any renewals, additions, substitutions, replacements, improvements, or appurtenances to the Mortgaged Property or the Personal Property.

2.13 <u>Inspection of Premises</u>. Until the Obligations shall have been fully paid and satisfied, Beneficiary and its agents shall have the right upon reasonable notice to Grantor at all reasonable times to inspect the Mortgaged Property, the Personal Property and the other security for the Obligations, and all applicable books and financial records relating thereto.

2.14 <u>Applicable to Prior Liens</u>. If this Deed of Trust is or becomes subordinate to any other lien, security interest, assignment of leases or rents or any other encumbrance affecting any

of the Mortgaged Property (collectively, the "Prior Liens") the provisions of this Section shall apply. Grantor shall not enter into any renewal, extension, modification, increase or refinancing of any instrument or document (collectively the "Prior Lien Document") which creates, evidences or governs any such Prior Lien or the indebtedness secured thereby without the prior written consent of Beneficiary. Grantor shall pay when due all indebtednesses evidenced and secured by the Prior Lien Documents and shall timely perform all other obligations of the Grantor under the Prior Lien Documents. Beneficiary may, but shall not be obligated to, pay any such indebtedness or perform any such obligations for the account of Grantor and any sum so expended plus interest shall be secured hereby. Grantor shall pay to Beneficiary on demand all amounts so expended by Beneficiary with interest on such amounts at the Default Rate (hereinafter defined). Grantor shall send to Beneficiary a copy of each notice of default or notice of acceleration or other notice received by Grantor from the holder of any of the Prior Lien Documents within three (3) business days after receipt thereof by Grantor. Notwithstanding the foregoing, Beneficiary does not consent to any Prior Lien unless otherwise expressly permitted in this Deed of Trust.

2.15 <u>Due on Sale or Encumbrance</u>. Grantor hereby acknowledges to Beneficiary that (a) the identity and expertise of Grantor were and continue to be material circumstances upon which the Beneficiary has relied in connection with, and which constitute valuable consideration to Beneficiary for, the extending to Grantor of the loan evidenced by the Note, (b) any change in such identity or expertise could materially impair or jeopardize the security granted to Beneficiary by this Deed of Trust, for the payment of the Obligations. Grantor therefore covenants and agrees with Beneficiary that the entire Obligations secured by this Deed of Trust shall, at the absolute option of Beneficiary, be and become immediately due and payable should the Grantor, without the prior written consent of Beneficiary (which consent may be given or withheld in the sole and absolute discretion of Beneficiary), sell, assign, transfer, convey, lease with option to purchase, enter into a contract for sale, grant an option to purchase, or further encumber any or all of Grantor's interest in the Mortgaged Property or the Personal Property, or any portion thereof, or permit the same to be sold, assigned, transferred, conveyed, contracted for or further encumbered; provided, however, that Grantor shall be permitted to sell and convey items of Personal Property in the ordinary course of business if such items are replaced by similar items of equal or greater value.

2.16 <u>Hazardous Wastes</u>. (a) As used below, and in any of the other Loan Documents, "Hazardous Substances" shall mean and include all hazardous and toxic substances, wastes or materials, any pollutants or contaminants (including, without limitation, asbestos and raw materials which include hazardous constituents), or any other similar substances, or materials which are included under or required by any local, state or federal law, rules or regulations pertaining to environmental regulation, contamination or clean-up, including, without limitation, "CERCLA," "RCRA," or state lien or state superlien or environmental clean-up statutes (all such laws, rules and regulations being referred to collectively as "Environmental Laws"). Grantor warrants, represents and covenants as follows:

(i) Neither the Mortgaged Property nor any other personal or real property owned by Grantor is subject to any private or governmental lien or judicial or administrative

notice or action, relating to Hazardous Substances or environmental problems, impairments or liabilities with respect to the Mortgaged Property or such other property, or the direct or indirect violation of any Environmental Laws.

(ii) Except strictly in accordance with all applicable Environmental Laws to the knowledge of Grantor (A) to no Hazardous Substances are located on or have been stored, processed or disposed of on or released or discharged from (including ground water contamination) the Mortgaged Property, and no aboveground or underground storage tanks exist on the Mortgaged Property; and (B) Grantor shall not allow any Hazardous Substances to be stored, located, discharged, possessed, managed, processed or otherwise handled on the Mortgaged Property. Grantor shall comply with all Environmental Laws affecting the Mortgaged Property wherein the failure to comply would have a material adverse effect on the Grantor's financial and business conditions.

(iii) To the best of the Grantor's knowledge and belief, no property adjoining the Mortgaged Property is being used, or has ever been used at any previous time for the disposal, storage, treatment processing or other handling of Hazardous Substances.

(iv) Grantor shall immediately notify Beneficiary should Grantor become aware of (1) any Hazardous Substance(s) or other environmental problem or liability with respect to the Grantor or the Mortgaged Property, or (2) any lien, action, or notice of the nature described in subparagraph (i) above. Grantor shall, at Grantor's own cost and expense, take all actions as shall be necessary or advisable for the clean-up of the Mortgaged Property, including all removal, containment and remedial actions in accordance with all applicable Environmental Laws (and in all events in a manner satisfactory to Beneficiary; provided, however that Grantor shall not be required to remove any Hazardous Substances from the Property of such Hazardous Substances can be maintained in place in compliance with all applicable Environmental Laws), and shall further pay or cause to be paid at no expense to Beneficiary all clean-up, administrative and enforcement costs of any court or applicable government agencies which may be asserted against the Mortgaged Property or the owner thereof. Grantor shall indemnify Beneficiary against and hold it harmless from all clean-up, administrative and enforcement costs, damages, liabilities, losses, claims, expenses (including attorneys' fees and disbursements) which are incurred by Beneficiary, whether before or after foreclosure of the lien hereof, with respect to any violation or claim of violation of any Environmental Law pertaining to the Mortgaged Property. Grantor shall (1) pay such amounts within ten (10) days after notice from Beneficiary itemizing the amounts incurred to the date of such notice without requirement of waiting for the ultimate outcome of any litigation, claim or other proceeding; or (2) provide Beneficiary, within ten (10) days after demand by Beneficiary, with a bond, letter of credit or similar financial assurance evidencing to Beneficiary's satisfaction that the necessary funds are available to pay the cost of removing, treating, disposing of, or maintaining in place, such Hazardous Substances and discharging any assessments which may be established on the Mortgaged Property as a result thereof.

(b) Beneficiary (by its officers, employees and agents) at any time and from time to time, after the occurrence of an Event of Default, may contract for the services of persons (the "Site Reviewers") to perform environmental site assessments ("Site Assessments") on the Mortgaged Property for the purpose of determining whether there exists on the Mortgaged Property any environmental condition which could reasonably be expected to result in any liability, cost or expense to the owner, occupier or operator of such Mortgaged Property arising under any state, federal or local law, rule or regulation relating to Hazardous Substances. The Site Assessments may be performed at any time or times, upon reasonable notice, and under reasonable conditions established by Grantor which do not impede the performance of the Site Assessment. The Site Reviewers are hereby authorized to enter upon the Mortgaged Property for such purposes. The Site Reviewers are further authorized to perform both above and below the ground testing for environmental damage or the presence of Hazardous Substances on the Mortgaged Property and such other tests upon the Mortgaged Property as may be necessary to conduct the Site Assessments in the reasonable opinion of the Site Reviewers. Grantor will supply to the Site Reviewers such historical and operational information regarding the Mortgaged Property as may be reasonably requested by the Site Reviewers to facilitate the Site Assessments and will make available for meetings with the Site Reviewers appropriate personnel having knowledge of such matters. On request Beneficiary shall make the results of such Site Assessments fully available to Grantor, which (prior to an Event of Default) may at its election participate under reasonable procedures in the direction of such Site Assessments and the description of tasks of the Site Reviewers. The reasonable cost of performing such Site Assessments shall be paid by Grantor upon demand of Beneficiary and any such obligations shall be Obligations secured by this Deed of Trust.

(c) Beneficiary shall have the right but not the obligation, prior or subsequent to an Event of Default, without in any way limiting Beneficiary's other rights and remedies under this Deed of Trust, to enter onto the Mortgaged Property upon reasonable notice or to take such other actions as it deems necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any Hazardous Substances on the Mortgaged Property following receipt of any notice from any governmental authority asserting the existence of any Hazardous Substance pertaining to the Mortgaged Property or any part thereof which, if true, could result in an order, suit, imposition of a lien on the Mortgaged Property, or other action and/or which, in Beneficiary's reasonable opinion, could jeopardize Beneficiary's security under this Deed of Trust, provided, however, that Beneficiary shall not cause or require the removal of any Hazardous Substances if such Hazardous Substances can be maintained in place in compliance with all applicable Environmental Laws. All reasonable costs and expenses paid or incurred by Beneficiary in the exercise of any such rights shall be Obligations secured by this Deed of Trust and shall be payable by Grantor upon demand.

(d) All warranties and representations above shall be deemed to be continuing and shall remain true and correct in all material respects until all of the Obligations have been paid in full and any limitations period expires. Grantor's covenants above shall survive any exercise of any remedy by Beneficiary under the Loan Document, including foreclosure of this Deed of Trust (or deed in lieu thereof), even if, as a part of such foreclosure (or deed in lieu of foreclosure), the Obligations are satisfied in full and/or this Deed of Trust shall have been released.

10

2.17  <u>Annual Inspection</u>. Upon reasonable notice to Grantor, Beneficiary may make an annual inspection of the Mortgaged Property in accordance with its normal servicing guidelines. Grantor, or its agent, shall accompany Beneficiary on this inspection.  If Grantor and Beneficiary cannot agree on a date for the inspection, Beneficiary shall notify Grantor of a date it plans to inspect the Mortgaged Property and Beneficiary shall proceed on that date with the inspection.  If Beneficiary's inspection reveals items that need to be repaired/restored, then the Grantor shall complete said repairs/restoration within ninety (90) days of the inspection report prepared by Beneficiary.

## ARTICLE III

## ASSIGNMENT OF RENTS AND LEASES

3.1  <u>Assignment of Rents and Leases</u>. All of the rents, royalties, bonuses, issues, profits, revenue, income, deposits, escrow accounts and other benefits derived from the Mortgaged Property or arising from the use or enjoyment of any portion thereof or from any existing or future lease or agreement pertaining thereto and liquidated damages following default under such leases, and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by damage to any part of the Mortgaged Property, together with any and all rights that Grantor may have against any tenant under such leases or any subtenants or occupants of any part of the Mortgaged Property and any award made hereafter to Grantor in any court proceeding involving any of the tenants or in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court, and all payments by tenants in lieu of rent (all hereinafter collectively called the "Rents"), are hereby absolutely and unconditionally assigned to Beneficiary, to be applied by Beneficiary in payment of the Obligations. Grantor hereby further assigns to Beneficiary and if an Event of Default has occurred and is continuing, all existing and future leases, including subleases, any and all extensions, renewals, modifications, and replacements thereof, and all guaranties of tenants' performance thereunder, upon any part of the Mortgaged Property (the "Leases"). It is understood and agreed by the parties that this assignment is intended to be and is an absolute assignment from Grantor to Beneficiary, and not merely the passing of a security interest; provided, however, that prior to an Event of Default, Grantor shall have a license, without joinder of Beneficiary, to enforce the Leases and to collect the Rents as they come due and to retain, use and enjoy the same. Grantor shall, upon request of Beneficiary, execute confirmatory assignments of any specific leases affecting any part of the Mortgaged Property.

3.2  <u>Warranties Concerning Leases and Rents</u>. Grantor represents and warrants:

(a) Grantor has good title to the Leases and Rents hereby assigned and authority to assign them without the consent of any other party;

(b) none of the Rents have been or will be assigned, mortgaged or pledged;

(c) none of the Rents have been or will be anticipated, waived, released, discounted, set off or compromised;

(d) Grantor has not received any funds or deposits (other than security deposits and pet deposits received in the ordinary course of business) from any tenant except for and on account of Rents which have heretofore come due;

3.3 <u>Grantor's Covenants of Performance</u>. Grantor covenants to:

(a) perform all of its obligations under the Leases, take all action and fulfill all covenants and conditions required to enforce the Leases against the tenants, and give prompt notice to Beneficiary of any material failure to do so;

(b) enforce the tenants' obligations under the Leases;

(c) defend, at Grantor's expense, any proceeding pertaining to the Leases, including, if Beneficiary so requests, any such proceeding to which Beneficiary is a party; and

(d) neither create nor permit any encumbrance upon or assignment of Grantor's interest as lessor under the Leases, except this Deed of Trust.

3.4 <u>Prior Approval for Actions Affecting Leases</u>. Except in the ordinary course of business, Grantor shall not, without the prior written consent of Beneficiary:

(a) receive or collect Rents not yet due under the terms of any of the Leases;

(b) waive or release any obligation of any tenant under the Leases or any party liable under the Leases;

(c) cancel, terminate or modify any of the Leases, cause or permit any cancellation, termination or surrender of any of the Leases, or commence any proceedings for dispossession of any tenant under any of the leases, except upon default by the tenant thereunder; or

(d) change, alter or modify any of the Leases.

3.5 <u>No Obligation upon Beneficiary</u>. Beneficiary's acceptance of the assignment of Leases and Rents provided for herein shall not obligate Beneficiary to appear in or defend any proceeding relating to any of the Leases or to the Mortgaged Property, take any action hereunder, expend any money, incur any expenses, or perform any obligation or liability under the Leases, or assume any obligation for any deposits delivered to Grantor by any tenant. Beneficiary shall not be liable for any injury or damage to person or property in or about the Mortgaged Property.

3.6 <u>Records</u>. Upon request by Beneficiary, Grantor shall deliver to Beneficiary executed originals of all Leases and copies of all records relating thereto.

3.7 <u>Merger</u>. There shall be no merger of the leasehold estates created by the Leases with the fee estate of the Mortgaged Property without the prior written consent of Beneficiary.

3.8 <u>Right to Rent</u>. Grantor hereby authorizes Beneficiary to give notice in writing of this assignment at any time to any tenant under any of the Leases, and from and after the occurrence of an Event of Default hereunder, to direct any such tenant to make payment of rentals and other amounts due directly to Beneficiary. Grantor hereby authorizes and directs the tenants under the Leases to pay Rents to Beneficiary upon written demand by Beneficiary, without further consent of Grantor, and without verifying whether an Event of Default has occurred; and the tenants may rely upon any written statement delivered by Beneficiary to the tenants. Any such payment to Beneficiary shall constitute full acquittance to the party making such payment for the amount of such payment.

3.9 <u>Priority of Leases</u>. Except to the extent, if any, otherwise provided in a written instrument signed by Beneficiary, the lien of this Deed of Trust is prior and paramount to all Leases of the Mortgaged Property or any part thereof executed subsequent to the date hereof . However, Beneficiary may at its option without the consent of any person or entity, at any time subordinate the lien of this Deed of Trust to any future Lease of all or any part of the Mortgaged Property by giving written notice to the tenant under such Lease; and upon sale of the Mortgaged Property under this Deed of Trust such tenant shall attorn to the owner and each successive owner of the Mortgaged Property.

3.10 <u>Inconsistent Provisions</u>.  Grantor has this date executed an Assignment of Leases and Rents, separate and apart from this Article III, in favor of Beneficiary ("Assignment").  In the event there are provisions contained in the Assignment which are inconsistent with the provisions contained in this Article III, it shall be deemed to be the intent of the parties that the provisions contained in the Assignment supersede any inconsistent provisions contained in this Article III.

## ARTICLE IV

## SECURITY AGREEMENT

4.1 <u>Security Interest</u>. This Deed of Trust shall be a security agreement between Grantor, as debtor, and Beneficiary, as secured party, respecting the Personal Property (as defined and set out herein below as items (a) through (h)), and Grantor grants to Beneficiary a security interest in such Personal Property owned by Grantor now or any time hereafter located on the Mortgaged Property or used in connection therewith including, but not limited to:

(a)    All heating, plumbing, lighting, water heating, incinerating, ventilating and air conditioning equipment, swimming pool equipment, shades, awnings, blinds, drapes and draperies, linoleum, rugs and carpeting, all furniture, furnishings, machinery, equipment, appliances and fixtures (whether or not attached to the realty as to become a part thereof) and all other tangible personal property of

every kind and character owned by Grantor now or at any time hereafter located in or on the Mortgaged Property or used in connection therewith, together with all substitutions, additions, and accessions to any and all of the foregoing, and exchanges and replacements of any and all of the foregoing;

(b)    All building materials owned by Grantor now or hereafter located on the Mortgaged Property, prior to incorporation of said building materials in the Improvements;

(c)    All plans and specifications owned by Grantor related to the Mortgaged Property and the Improvements;

(d)    All rents, incomes, profits, revenues, royalties, bonuses, rights, accounts, contract rights, general intangibles, and benefits whether arising under any leases or tenancies now existing or hereafter created on the Mortgaged Property and the Improvements, or otherwise;

(e)    All leases and subleases covering the Mortgaged Property or any portion thereof now or hereafter existing or entered into, and all rights and interests thereunder, including without limitation, all cash or security deposits, advance rentals, guarantees and deposits of similar nature;

(f)    All judgments, awards of damages, and settlements hereafter made to Grantor as a result of or in lieu of any taking of the Mortgaged Property and Improvements, or any part thereof or interest therein under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Property or the Improvements or any part thereof or interest therein, including any award for change of grade of streets.

(g)    All proceeds of hazard or other insurance policies payable to Grantor maintained with respect to the Improvements (whether or not Beneficiary is loss payee thereof); and

(h)    All proceeds of any and all of the foregoing collateral. (Although proceeds are covered, Beneficiary does not authorize the sale or other transfer of any of the collateral or the transfer of any interest in the collateral);

all for the purpose of securing all Obligations of Grantor contained in any of the Loan Documents. In addition to Beneficiary's other rights hereunder, Beneficiary shall have all rights of secured parties under the Uniform Commercial Code as adopted in Tennessee (hereinafter called the "Code"). Grantor shall execute and deliver to Beneficiary all financing statements that may be required by Beneficiary to establish and maintain the validity and priority of Beneficiary's security interest, and Grantor shall bear all costs thereof, including all Code searches reasonably required by Beneficiary. Upon the occurrence of an Event of Default, Beneficiary or the Trustees may sell the Personal Property as provided in Section 6.4 hereof.

This security agreement is supplemental to, and not in derogation of, any separate security agreement which now or hereafter is entered into between the Grantor and the Beneficiary.

4.2 <u>Representations and Warranties</u>. The Grantor represents and warrants as follows:

(a) Grantor's principal place of business and chief executive office and state of formation (or residence if Grantor is an individual) are set forth in the first paragraph of this Deed of Trust.

(b) The Grantor owns and, with respect to any Personal Property hereafter acquired, will own the Personal Property free and clear of any lien, security interest or other charge or encumbrance except for the security interest created by this Deed of Trust, and no effective financing statement or other instrument similar in effect covering all or any part of the Personal Property is on file in any recording office except such as may have been filed in favor of Beneficiary relating to this Deed of Trust; Grantor has not and, with respect to Personal Property hereafter acquired, will not acquire any of the Personal Property under any conditional sales contract or other agreement or arrangement where the seller thereof purports to take or reserve a security interest therein; Grantor has the right to encumber the Personal Property and to grant a security interest therein to Beneficiary; and Grantor will forever warrant and defend the security interest of Beneficiary against the lawful claims of all persons.

4.3 <u>Covenants as to the Personal Property</u>. So long as any of the Obligations shall remain outstanding, unless Beneficiary shall otherwise consent in writing:

(a) <u>Notice of Changes</u>. Subject to the provisions of Section 2.15 hereof, Grantor shall give advance notice in writing to Beneficiary of any change or proposed change in Grantor's name, identity, or structure and shall execute and deliver to Beneficiary, prior to or concurrently with the occurrence of any such change, all additional financing statements that Beneficiary may require to establish and maintain the validity and priority of Beneficiary's security interest with respect to any of the Personal Property described or referred to herein.

(b) <u>Further Assurances</u>. Grantor will at Grantor's expense, at anytime and from time to time, promptly execute and deliver all further instruments and documents and take all further action that Beneficiary deems necessary or desirable or that Beneficiary may request in order (i) to perfect and protect the security interest created or purported to be created hereby; (ii) to enable Beneficiary to exercise and enforce its rights and remedies hereunder in respect of the Personal Property; or (iii) to otherwise effect the purposes of this Deed of Trust, including, without limitation: (A) executing and filing such financing or continuation statements, or amendments thereto, as Beneficiary deems necessary or desirable or that Beneficiary may request in order to perfect and preserve the security interest created or purported to be created hereby; (B) furnishing to Beneficiary from time to time statements and schedules further identifying and describing the Personal Property and such other reports in connection with the Personal Property as Beneficiary may reasonably request, all in reasonable detail.

(c) <u>Location of Property</u>. The Grantor will at all times keep all of the Personal Property on the Mortgaged Property.

(d) <u>Financing Statements</u>. The Grantor hereby authorizes Beneficiary to file, without execution by the Grantor where permitted by law, one or more financing or continuation statements, and amendments thereto, relating to the Personal Property.

(e) <u>Care and Custody</u>. The powers conferred on Beneficiary hereunder are solely to protect its interest in the Personal Property and shall not impose any duty upon it to exercise any such powers. Except for the accounting for moneys actually received by it hereunder, Beneficiary shall have no duty as to any Personal Property, the preservation or protection of the same or the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Personal Property.

ARTICLE V

EVENTS OF DEFAULT

The occurrence of any one or more of the following events shall constitute an Event of Default hereunder:

5.1 <u>Failure to Pay Obligations</u>. If Grantor shall fail to pay any part of the Obligations, whether principal or interest, promptly when the same becomes due, and continuation of such failure for a period of ten (10) days or if the Grantor shall fail to pay any sum necessary to satisfy and discharge taxes and assessments promptly when due, or to maintain insurance or repairs, or the necessary expense of protecting the Mortgaged Property or the Personal Property and executing this trust; or

5.2 <u>Default Under Other Liens</u>. If any of the Mortgaged Property or the Personal Property be levied upon or attached by any legal process, or if there shall occur any default under or with respect to any Prior Lien, or if the holder of any lien or security interest on the Mortgaged Property or the Personal Property institutes foreclosure or other proceedings for the enforcement of its remedies thereunder; or

5.3 <u>Default on Other Indebtedness</u>. If the Grantor shall default in the payment of any other indebtedness, liability or obligation now or hereafter owed by the Grantor to the Beneficiary; or

5.4 <u>Bankruptcy or Insolvency</u>. If Grantor, or any other owner of the Mortgaged Property, or any guarantor of any of the Obligations, shall voluntarily become a party to any insolvency, bankruptcy, composition or reorganization procedure, or make any assignment for the benefit of creditors; or if any involuntary bankruptcy, insolvency, composition, or other reorganization proceedings be filed against Grantor, any other owner of the Mortgaged Property, or any guarantor of the Obligations, and the same shall not be dismissed within thirty (30) days after the commencement of any such involuntary proceedings; or

5.5 <u>Abandonment</u>. If Grantor abandons any material portion of the Mortgaged Property; (provided that Grantor shall not be required to occupy the Mortgaged Property on a day-to-day basis); or

5.6 <u>Grant of Easement, etc</u>. If Grantor grants any easement or dedication, files any plat, condominium declaration or restriction, with respect to the Mortgaged Property, unless such action is authorized by the Loan Documents or is otherwise consented to by Beneficiary; or

5.7 <u>False Representation</u>. If any statement, representation or warranty in the Loan Documents, any financial statement or any other writing delivered to Beneficiary in connection with the Obligations is false, misleading or erroneous in any material respect; or

5.8 <u>Grantor's Default under Loan Agreement</u>. If Grantor shall default in any of Grantor's covenants, obligations and undertakings under the Loan Agreement; or

5.9 <u>Nonperformance of Covenants</u>. If there shall occur any other default in Grantor's covenants, warranties, agreements, liabilities, obligations and undertakings as contained in this Deed of Trust or the Loan Documents or contained in any other instrument which now or hereafter secures the Obligations, including but not limited to, the restriction against secondary financing in paragraph 2.15 above.

## ARTICLE VI

## REMEDIES

If an Event of Default shall occur and be continuing, Beneficiary may exercise any one or more of the following remedies:

6.1 <u>Acceleration</u>. Beneficiary may declare the entire Obligations, principal and interest, immediately due and payable without notice or demand, the same being hereby expressly waived.

6.2 <u>Enforcement of Assignment of Rents and Leases</u>. Beneficiary may:

(a) terminate the license granted to Grantor to collect the Rents (regardless of whether Beneficiary or Trustee shall have entered into possession of the Mortgaged Property), collect and sue for the Rents in Beneficiary's own name, give receipts and releases therefor, and after deducting all expenses of collection, including reasonable attorneys' fees, apply the net proceeds thereof to any Obligations as Beneficiary may elect;

(b) to the extent permitted by the Leases, make, modify, enforce, cancel or accept surrender of any Leases, evict tenants, adjust Rents, maintain, decorate, refurbish, repair, clean, and make space ready for renting, and otherwise do anything Beneficiary reasonably deems advisable in connection with the Mortgaged Property;

(c) apply the Rents so collected to the operation and management of the Mortgaged Property, including the payment of reasonable management, brokerage and attorneys' fees, or to the Obligations; and

(d) require Grantor to transfer and deliver possession of all security deposits and records thereof to Beneficiary.

6.3 <u>Power of Sale</u>. Beneficiary may require the Trustee, and the Trustee is hereby authorized and empowered, to enter and take possession of the Mortgaged Property and to sell all or part of the Mortgaged Property, at public auction, to the highest bidder for cash, free from equity of redemption, and any statutory or common law right of redemption, homestead, dower, marital share, and all other exemptions, after giving notice of the time, place and terms of such sale and of the Mortgaged Property to be sold, by advertising the sale of the property for twenty-one (21) days by three (3) weekly notices in some newspaper published in the county and state where the Mortgaged Property is situated, which notice may be given before or after entry by the Trustee. The Trustee shall execute a conveyance to the purchaser in fee simple and deliver possession to the purchaser, which the Grantor warrants shall be given without obstruction, hindrance or delay. Trustee may sell all or any portion of the Mortgaged Property, together or in parcels, and may execute and deliver to the purchaser or purchasers of such property a conveyance in fee simple. The Trustee in making such sale shall receive the proceeds thereof and shall apply the same as follows: (a) first, to the payment of the expenses of making, maintaining and executing this trust, protection of the Mortgaged Property, including the expense of any litigation and reasonable attorneys' fees, and reasonable compensation to the Trustee; (b) second, to any advancements made by the Trustee or the Beneficiary pursuant hereto, with interest thereon; (c) third, to the payment of the Obligations herein secured or intended so to be, in such order as Beneficiary shall elect, and any balance of said Obligations may be the subject of immediate suit; (d) and, fourth, should there be any surplus, Trustee will pay it to the Grantor, or to such person as may be legally entitled thereto. The sale or sales by Trustee of less than the whole of the Mortgaged Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make successive sale or sales under such power until the whole of the Mortgaged Property shall be sold; and if the proceeds of such sale or sales of less than the whole of the Mortgaged Property shall be less than the aggregate of the Obligations and the expenses thereof, this Deed of Trust and the lien, security interest and assignment hereof shall remain in full force and effect as to the unsold portion of the Mortgaged Property; provided, however, that Grantor shall never have any right to require the sale or sales of less than the whole of the Mortgaged Property, but Beneficiary shall have the right at its sole election, to request Trustee to sell less than the whole of the Mortgaged Property. Beneficiary may bid and become the purchaser of all or any part of the Mortgaged Property at any such sale, and the amount of Beneficiary's successful bid may be credited on the Obligations.

6.4 <u>Sale of Personal Property</u>. At the request of the Beneficiary the Trustee shall sell the Personal Property concurrently with and in conjunction with a sale of the Mortgaged Property, in which case the provisions of the preceding Section shall apply to the Personal Property as well as the Mortgaged Property. Grantor stipulates and agrees that a sale of the Personal Property in

conjunction with the Mortgaged Property is a commercially reasonable manner of disposing of the Personal Property. Alternatively, Beneficiary may sell or otherwise dispose of the Personal Property separately and apart from the Mortgaged Property in the time and manner provided by the Code. To the extent that the Code shall require prior notice of sale or other disposition of the Personal Property, five (5) days written notice shall be deemed to be reasonable notice. Beneficiary also may (a) require the Grantor to, and the Grantor hereby agrees that Grantor will at Grantor's expense and upon request of Beneficiary forthwith, assemble all or part of the Personal Property as directed by Beneficiary and make it available to Beneficiary at a place to be designated by Beneficiary which is reasonably convenient to the parties; and (b) sell the Personal Property or any part thereof in one or more parcels at public or private sale for cash or credit or for future delivery, and at such price or prices and upon such other terms as Beneficiary may deem commercially reasonable. Beneficiary shall not be obligated to make any sale of the Personal Property, regardless of notice of sale having been given. Beneficiary may adjourn any public or private sale from time to time by announcement at the scheduled time of the sale and such sale may, without further notice, be made at the time and place to which it was so adjourned.

6.5 <u>Judicial and Other Relief</u>. Beneficiary or Trustees may proceed by a suit or suits in equity or at law, whether for the specific performance of any covenant or agreement herein contained or in aid of the execution of any power herein granted, or for any foreclosure hereunder or for the sale of the Mortgaged Property or the Personal Property under the judgment or decree of any court or courts of competent jurisdiction.

6.6 <u>Entry on Mortgaged Property; Tenancy at Will</u>. (a) To the extent permitted by law, Beneficiary may enter into and upon and take possession of all or any part of the Mortgaged Property, and may exclude Grantor, and all persons claiming under Grantor, and its agents or servants, wholly or partly therefrom; and, holding the same, Beneficiary may use, administer, manage, operate, and control the Mortgaged Property and may exercise all rights and powers of Grantor in the name, place and stead of Grantor, or otherwise, as the Beneficiary shall deem best; and in the exercise of any of the foregoing rights and powers Beneficiary shall not be liable to Grantor for any loss or damage thereby sustained unless due solely to the willful misconduct or gross negligence of Beneficiary.

(b) In the event of a trustee's or other foreclosure sale hereunder and if at the time of such sale Grantor or any other party (other than a tenant under a Lease existing prior to this Deed of Trust or a Lease as to which the Beneficiary shall have expressly subordinated the lien of this Deed of Trust as hereinabove set out) occupies the portion of the Mortgaged Property so sold or any part thereof, such occupant shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of such purchaser, at a reasonable rental per day based upon the value of the portion of the Mortgaged Property so occupied (but not less than any rental theretofore paid by such tenant, computed on a daily basis). An action of forcible detainer shall lie if any such tenant holds over after a demand in writing for possession of such portion of the Mortgaged Property.

6.7 <u>Receiver</u>. Beneficiary may make application to a court of competent jurisdiction, and notice to Grantor or regard to the adequacy of the Mortgaged Property for the repayment of the Obligations, for appointment of a receiver of the Mortgaged Property, and Grantor does hereby irrevocably consent to such appointment. Any such receiver shall have all necessary and proper powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Mortgaged Property upon such terms as may be approved by the court.

6.8 <u>Beneficiary's Right to Perform</u>. Upon Grantor's failure to make a payment or perform an act required by the Loan Documents and upon the expiration of any applicable notice and cure periods, then at any time thereafter, and without notice to or demand upon Grantor and without waiving or releasing any other right, remedy or recourse, Beneficiary may (but shall not be obligated to) make such payment or perform such act for the account of and at the expense of Grantor, and shall have the right to enter upon the Mortgaged Property for such purpose and to take all such action as Beneficiary may deem necessary or appropriate.

6.9 <u>Remedies Cumulative, Concurrent and Nonexclusive</u>. If the Obligations are now or hereafter further secured by chattel mortgages, deeds of trust, security agreements, pledges, contracts of guaranty, assignments of leases, or other security, Beneficiary may, at its option, exhaust its remedies under any one or more of said instruments and this Deed of Trust, either concurrently or independently, and in such order as Beneficiary may determine. Beneficiary shall have all rights, remedies and recourses granted in the Loan Documents and available to it at law or equity (including, without limitation, those granted by the Code), and same (a) shall be cumulative, concurrent, and nonexclusive, (b) may be pursued separately, successively or concurrently against Grantor or others obligated for the Obligations, or any part thereof or against any one or more of them, or against the Mortgaged Property or the Personal Property, at the sole discretion of Beneficiary, and (c) may be exercised as often as occasion therefor shall arise, it being agreed by Grantor that the exercise of or failure to exercise any of same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse.

ARTICLE VII

TRUSTEES

7.1 <u>Action by Either Trustee</u>. If from time to time Co-Trustees are appointed hereunder, either of the Trustees shall be clothed with full power to act when action hereunder shall be required, and to execute any conveyance of the Mortgaged Property. In the event that the substitution of a Trustee shall become necessary for any reason, the substitution of one trustee in the place of those or any of those named herein shall be sufficient. The term "Trustees" shall be construed to mean "Trustee" whenever the sense requires. The necessity of the Trustees herein named, or any successor in trust, making oath or giving bond, is expressly waived.

7.2 <u>Employment of Agents</u>. The Trustees, or any one acting in their stead, shall have, in their discretion, authority to employ all proper agents and attorneys in the execution of this trust and/or in the conducting of any sale made pursuant to the terms hereof, and to pay for such

services rendered out of the proceeds of the sale of the Mortgaged Property, should any be realized; and if no sale be made or if the proceeds of sale be insufficient to pay the same, then Grantor hereby undertakes and agrees to pay the cost of such services rendered to said Trustees. Trustees may rely on any document believed by them in good faith to be genuine. All money received by Trustees shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extent required by law) , and Trustees shall not be liable for interest thereon.

7.3 <u>Indemnification of Trustees</u>. If the Trustees shall be made a party to or shall intervene in any action or proceeding affecting the Mortgaged Property or the title thereto, or the interest of the Trustees or Beneficiary under this Deed of Trust, the Trustees and Beneficiary shall be reimbursed by Grantor, immediately and without demand, for all reasonable costs, charges and attorney's fees incurred by them or either of them in any such case, and the same shall be secured hereby as a further charge and lien upon the Mortgaged Property.

7.4 <u>Successor Trustee</u>. In the event of the death, refusal, or of inability for any cause, on the part of the Trustee named herein, or of any successor trustee, to act at any time when action under the foregoing powers and trust may be required, or for any other reason satisfactory to the Beneficiary, the Beneficiary is authorized, either in its own name or through an attorney or attorneys in fact appointed for that purpose, by written instrument duly registered, to name and appoint a successor or successors to execute this trust, such appointment to be evidenced by writing, duly acknowledged; and when such writing shall have been registered, the substituted trustee named therein shall thereupon be vested with all the right and title, and clothed with all the power of the Trustee named herein and such like power of substitution shall continue so long as any part of the debt secured hereby remains unpaid.

## ARTICLE VIII

## MISCELLANEOUS

8.1 <u>Waiver of Marshaling and Certain Rights</u>. To the extent that Grantor may lawfully do so, Grantor hereby expressly waives any right pertaining to the marshaling of assets or marshalling of liens, the equity of redemption, any statutory or common law right of redemption, homestead, dower, marital share, and all other exemptions, or other matter which might defeat, reduce or affect the right of Beneficiary to sell the Mortgaged Property or the Personal Property for the collection of the Obligations, or the right of Beneficiary to the payment of the Obligations out of the proceeds of sale of the Mortgaged Property or the Personal Property, or the proceeds of the Rents and Leases, in preference to every other person and claimant.

8.2 <u>Waiver of Impairment of Recourse Defenses</u>. Without affecting the liability of Grantor or any other person (except any person expressly released in writing) for the payment or performance of any of the Obligations, and without affecting the rights of Beneficiary with respect to any security not expressly released in writing, Beneficiary may, at any time, and from time to time, either before or after the maturity of the Note, and without notice or consent:

21

(a) Release any person liable for payment or performance of all or any part of the Obligations;

(b) Make any agreement extending the time or otherwise altering the terms of payment of all or any part of the Obligations (without limit as to the number of such extensions or the period or periods thereof), or modifying or waiving any obligation, or subordinating, modifying or otherwise dealing with the lien or charge hereof;

(c) Exercise or refrain from exercising any right Beneficiary may have;

(d) Accept additional security of any kind;

(e) Release or otherwise deal with any property, real or personal, securing the Obligations, including all or any part of the Mortgaged Property herein described.

Furthermore, the failure of the Beneficiary to perfect any lien granted herein or in any other Loan Document, to take any action to obtain payment or performance of the Obligations or to exercise any rights or remedies available hereunder shall not relieve Grantor or any other person from liability for the payment or performance of the Obligations nor effect a discharge of the lien, security interest or assignment herein granted; it being intended that all "impairment of recourse" and "impairment of collateral" defenses are hereby waived.

8.3  No Waiver. No waiver by the Trustee or the Beneficiary shall be construed as a waiver of a subsequent similar default or any other default by the Grantor. No delay by Beneficiary or by the Trustee in exercising any right or remedy hereunder, or otherwise afforded by law, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder. No failure of Beneficiary to exercise any option herein given to declare the maturity of the debt hereby secured, no forbearance by Beneficiary after the exercise of such option, and no withdrawal or abandonment of foreclosure proceedings by the Beneficiary after the exercise of such option, shall be taken or construed as a waiver of its right to exercise such option or to declare such maturity by reason of any past, present, or future default on the part of the Grantor. Acceptance by Beneficiary of partial payments shall not constitute a waiver of the default by failure to make full payments.

8.4  Beneficiary's Consent. Except as otherwise expressly provided herein, in any instance hereunder where Beneficiary's approval or consent is required or the exercise of Beneficiary's judgment is required, the granting or denial of such approval or consent and the exercise of such judgment shall be within the reasonable discretion of Beneficiary, and Beneficiary shall not, for any reason or to any extent, be required to grant such approval or consent or exercise such judgment.

8.5  Appointment of Attorney. Grantor hereby irrevocably appoints Beneficiary as Grantor's attorney-in-fact, coupled with an interest, with full authority in the place and stead of the Grantor and in the name of the Grantor or otherwise, from time to time in the Beneficiary's

discretion during the existence of an Event of Default, to take any action and to execute any instrument which Beneficiary may deem necessary or advisable to accomplish the purposes of this Deed of Trust, including, without limitation (a) to obtain and adjust insurance required to be maintained pursuant to the provisions of this Deed of Trust; (b) to ask, demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due in respect of any of the Mortgaged Property, the Leases or the Personal Property; (c) to receive, endorse, and collect any drafts or other instruments, documents, and chattel paper in connection with clause (a) or (b) above; (d) to appear in any action concerning any of the Leases; and (e) to file any claims or take any action or institute any proceedings which Beneficiary may deem necessary or desirable for the collection of any of the Rents or the Personal Property or any amounts otherwise due in connection with the Mortgaged Property or the Personal Property, or otherwise to enforce the rights of Beneficiary with respect to the Mortgaged Property, the Leases and Rents and the Personal Property. Grantor hereby ratifies and approves all acts of said attorney; and so long as the attorney acts in good faith it shall have no liability to Grantor for any act or omission as such attorney,

8.6 <u>Estoppel Certificate</u>. At the request of the Beneficiary, the Grantor shall furnish promptly a written statement or affidavit, in such form as may be required by Beneficiary, confirming the unpaid balance of the Obligations, the date to which interest has been paid and that there are no offsets to or defenses against any payment or performance of the Obligations or, if there are any such offsets or defenses, specifying them.

8.7 <u>Expenses of Beneficiary</u>. The Grantor will upon demand pay to the Beneficiary the amount of any and all costs and expenses, including without limitation all fees and disbursements of the Beneficiary's counsel and of any experts and agents, which Beneficiary may incur in connection with (a) the preparation and recording of this Deed of Trust and the financing statements to be filed to protect the security interests granted herein, (b) the administration of this Deed of Trust, (c) the sale of, collection from, or other realization upon the Mortgaged Property, the Rents and Leases and the Personal Property (d) the exercise or enforcement of any of the rights of Beneficiary hereunder; or (e) the failure of Grantor to perform or observe any of the provisions hereof.

8.8 <u>Indemnification</u>. The Grantor agrees to indemnify and hold the Beneficiary harmless from and against any and all claims, losses, and liabilities arising out of or resulting from this Deed of Trust and the assignment of rents and leases and the grant of security interests contained herein (including, without limitation, enforcement of this Deed of Trust), and/or arising out of or in connection with any other Loan Documents, except claims, losses, or liabilities resulting solely and directly from the Beneficiary's gross negligence or willful misconduct. In the event that Beneficiary shall assign or transfer its rights hereunder or under the Note or any other Loan Documents, the rights of the Beneficiary under this section, under the immediately preceding section and under any other provisions of the Loan Documents which require the Grantor to indemnify or pay expenses of the Beneficiary shall continue in favor of the Beneficiary originally named herein as well as any successor or assign of the Beneficiary; and any such provision may be enforced severally by the original Beneficiary named herein or any such successor or assign of the Beneficiary or, at their option, by all of such parties acting jointly.

8.9 <u>Default Rate</u>. If Beneficiary shall expend any money chargeable to Grantor or subject to reimbursement by Grantor under the terms of this Deed of Trust or any of the other Loan Documents, Grantor shall repay the same to Beneficiary immediately at the place where payments under the Note are payable, together with interest thereon from the date due (or, if there is no specified due date, from the date of demand therefor by Beneficiary) until paid at a rate (herein the "Default Rate") equal to the amount set forth in the Note.

8.10 <u>Subrogation</u>. To the extent that proceeds of the Obligations are used to pay any outstanding lien, charge or encumbrance affecting the Mortgaged Property (including, without limiting the generality of the foregoing, any Prior Lien) Beneficiary shall be subrogated to all rights, interests and liens owned or held by any owner or holder of such outstanding liens, charges and encumbrances, irrespective of whether such liens, charges or encumbrances are released of record; <u>provided, however</u>, that the terms and provisions hereof shall govern the rights and remedies of Beneficiary and, to the extent permitted by law without impairing any of Beneficiary's rights of subrogation, shall supersede the terms, provisions, rights, and remedies under the lien or liens to which Beneficiary is subrogated hereunder.

8.11 <u>Payment in Full</u>. If the said Grantor shall pay and perform all of the Obligations promptly when due, and shall pay such sums as shall be necessary to discharge taxes and maintain insurance and perform repairs and the costs, fees and expenses of making, enforcing and executing this trust, when they shall severally be due and payable, and shall comply with all of the covenants, terms and conditions of the Note and the Deed of Trust, and any other instrument which also now or hereafter secures the Obligations secured hereby, then this conveyance shall become void, the Trustee shall release his interest in the Mortgaged Property herein described at the expense of the Grantor, and the Beneficiary shall execute and deliver to Grantor, at Grantor's request, such documents as may be necessary to evidence the termination of the security interests and assignments herein granted.

8.12 <u>No Partnership.</u> Nothing contained in this Deed of Trust is intended to create any partnership, joint venture or association between Grantor and Beneficiary, or in any way make Beneficiary a co-principal with Grantor with reference to the Mortgaged Property, and any inferences to the contrary are hereby expressly negated.

8.13 <u>Headings, Use of Terms</u>. The article, paragraph and subparagraph headings hereof are inserted for convenience of reference only and shall not alter, define, or be used in construing the text of such articles, paragraphs or subparagraphs. Whenever used, the singular number shall include the plural and the plural the singular, and the use of any gender shall be applicable to all genders. The term "Grantor" shall include in their individual capacities and jointly all parties hereinabove named a Grantor. The term "Beneficiary" shall include any lawful owner, holder, pledgee, or assignee of any of the Obligations. The duties, covenants, conditions, obligations, and warranties of Grantor in this Deed of Trust shall be joint and several obligations of Grantor and each Grantor, if more than one, and each Grantor's heirs, personal representatives, successors and assigns.

8.14 <u>Severability</u>. If any provision of this Deed of Trust is held to be illegal, invalid, or unenforceable under present or future laws effective while this Deed of Trust is in effect, the legality, validity and enforceability of the remaining provisions of this Deed of Trust shall not be affected thereby, and in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Deed of Trust a provision that is legal, valid and enforceable and as similar in terms to such illegal, invalid or unenforceable provision as may be possible, If any of the Obligations shall be unsecured, the unsecured portion of the Obligations shall be completely paid prior to the payment of the secured portion of such Obligations, and all payments made on account of the Obligations shall be considered to have been paid on and applied first to the complete payment of the unsecured portion of the Obligations.

8.15 <u>Burden and Benefit</u>. This instrument shall be binding on Grantor, and Grantor's heirs, executors, administrators, successors and assigns, and shall inure to the benefit of the Beneficiary and Trustees and their respective successors and assigns.

8.16 <u>Applicable Law</u>. This Deed of Trust shall be governed by and construed in accordance with the internal laws of the State of Tennessee without regard to principles of conflicts of laws.

8.17 <u>Venue of Actions</u>. It is expressly understood and agreed that no suit or action shall be commenced by the Grantor, or by any successor, personal representative or assignee of Grantor, with respect to the indebtedness secured hereby with respect to this Deed of Trust, or any of the other Loan Documents, other than in a state court of competent jurisdiction in and for the County of the State in which the principal place of business of the Bank is situated, or in the United States District Court for the District in which the principal place of business of the Bank is situated, and not elsewhere. Nothing in this paragraph contained shall prohibit Bank from instituting suit in any court of competent jurisdiction for the enforcement of its rights hereunder, in the Note, or in any other Loan Document.

8.18 <u>Delivery of Notice</u>. Notwithstanding anything to the contrary in this Deed of Trust, the Promissory Note or any other collateral loan document, any notice required to be given by Bank, if any, shall be deemed to have been sent upon being placed in a regular U.S. Mail depository. The date of the postal cancellation shall be deemed the date used for the calculation of any notice period.

[SIGNATURES APPEAR ON NEXT PAGE]

IN WITNESS WHEREOF, Grantor has executed this Indenture on this the day and year first above written.

1835 Nevassee Investments, LLC

by _____
Douglas DaSilva Managing Member

Before me, a Notary Public within and for said State and County, duly commissioned and qualified, personally appeared _Douglas DaSilva_, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who upon oath acknowledged himself/herself to be the __Managing member__ of _1835 Nevassee Investments_, a _Nevada_ limited liability corporation, the within named bargainor, and that he/she as such _managing member_ being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the name of the limited liability corporation by himself/herself as _managing member_.

WITNESS my hand and official seal at office this _30th_ day of _October_, 200_6_

_____
NOTARY PUBLIC

My Commission Expires:
_July 20, 2008_

CHARLOTTE A. BOTHWELL
Notary Public State of Nevada
No. 04-90553-1
My Appt. Expires July 20, 2008

# EXHIBIT A

## Real Property Description

EXHIBIT "A"

BEING PART OF THE DAVID T. DEBERRY AND WIFE REBECCA L. DEBERRY
PROPERTY AS RECORDED IN INSTRUMENT ES-3207 AND RERECORDED IN
INSTRUMENT ES-7179 AT THE SHELBY COUNTY REGISTER'S OFFICE, LOCATED
IN MEMPHIS, TENNESSEE AND BEING MORE PARTICULARLY DESCRIBED AS
FOLLOWS:

BEGINNING AT A POINT IN THE WEST LINE OF MCLEAN BOULEVARD (73.00
FOOT RIGHT-OF-WAY) 23.38 FEET SOUTH OF THE SOUTH LINE OF UNION
AVENUE (80.00 FOOT RIGHT-OF-WAY); THENCE S0°00'00"W ALONG SAID WEST
LINE A DISTANCE OF 216.22 FEET TO A FOUND CROWS FOOT; THENCE
N90°00'00"W  A DISTANCE OF 200.81 FEET TO A POINT IN THE EAST LINE OF
THE BELZ INVESTCO L.P. PROPERTY (AW-2471); THENCE N0°00'00"E  A
DISTANCE OF 26.50 FEET TO A POINT; THENCE S90°00'00"E A DISTANCE OF
19.31 FEET TO A POINT; THENCE N0°00'00"E A DISTANCE OF 214.05 FEET TO A
FOUND IRON PIN IN THE SOUTH LINE OF SAID UNION AVENUE; THENCE
S89°42'00"E A DISTANCE OF 158.12 FEET TO A POINT OF CURVATURE; THENCE
SOUTHEASTWARDLY ALONG A CURVE TO THE RIGHT, HAVING A RADIUS OF
23.50 FEET, AN ARC DISTANCE OF 36.79 FEET (CHORD S44°51'00"E – 33.15
FEET) TO THE POINT OF BEGINNING AND CONTAINING 43,968 SQUARE FEET
OR 1.009 ACRES.  LESS AND EXCEPT THE FOLLOWING DESCRIBED AIR RIGHTS
PARCEL:

ALL THAT LAND, PROPERTY, AND SPACE AT AND ABOVE A HORIZONTAL PLANE
AT AN ELEVATION OF 306.70 FEET ABOVE MEAN SEA LEVEL, THE SPECIFIC
POINT OF REFERENCE FOR THIS ELEVATION BEING THE CITY OF MEMPHIS
BENCHMARK (ELEVATION:  300.045) AT THE NORTHEAST CORNER OF
AUBURNDALE STREET AND MADISON AVENUE, MEMPHIS, TENNESSEE, THE
HORIZONTAL LIMITS OF WHICH ARE THE PLANES FORMED BY PROJECTING
VERTICALLY UPWARD FROM THE SURFACE OF THE EARTH THE BOUNDARIES
AS HEREINAFTER DESCRIBED:

COMMENCING AT A FOUND CROWS FOOT IN THE WEST LINE OF MCLEAN
BOULEVARD (73.00 FOOT RIGHT-OF-WAY) A DISTANCE OF 239.60 FEET
SOUTHWARDLY, AS MEASURED ALONG SAID WEST LINE OF MCLEAN
BOULEVARD, FROM ITS TANGENT INTERSECTION WITH THE SOUTH LINE OF
UNION AVENUE (80.00 FOOT RIGHT-OF-WAY); THENCE N90°00'00"W A
DISTANCE OF 51.67 FEET TO THE POINT OF BEGINNING OF THE DESCRIPTION
OF SAID AIR RIGHTS PARCEL; THENCE N90°00'00"W, A DISTANCE OF 116.30
FEET TO A POINT; THENCE N00°00'00"E, A DISTANCE OF 54.30 FEET TO A
POINT; THENCE S90°00'00"E, A DISTANCE OF 25.80 FEET TO A POINT; THENCE
N00°00'00"E, A DISTANCE OF 6.70 FEET TO A POINT; THENCE S90°00'00"E, A
DISTANCE OF 66.00 FEET TO A POINT; THENCE S00°00'00"W, A DISTANCE OF
55.70 FEET TO A POINT; THENCE S90°00'00"E, A DISTANCE OF 24.50 FEET TO A
POINT; THENCE S00°00'00"W, A DISTANCE OF 5.30 FEET TO THE POINT OF
BEGINNING AND CONTAINING 5,556 SQUARE FEET OR 0.128 ACRES.

**Exhibit B**

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Integrated Financial Associates, Inc.
3311 S. Rainbow Blvd., Suite 209
Las Vegas, NV 89146

## ASSIGNMENT OF NOTE AND DEED OF TRUST

**For Value Received,** The undersigned hereby grants, assigns and transfers to

Brytar Company

a 100% beneficial interest under that certain dated October 30, 2006, executed by 1835 Nevassee Investments, LLC, as Trustor, to Fidelity National Title Company, as Trustee, and Integrated Financial Associates, Inc., as Beneficiary, recorded November 7, 2006 as Instrument No. 06181379 in the County Recorder's Office for Shelby County, Tennessee, describing land therein as:

**See Exhibit A attached hereto and incorporated herein and**

**Together with** the note or notes therein described or referred to, the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Integrated Financial Associates, Inc.

By: _____
William Dyer, President

STATE OF NEVADA          )
                         ) SS
COUNTY OF CLARK          )                              Notary Seal

On the _____ day of _____, 2011 before me, a Notary Public in and for said State, personally appeared William Dyer, known to me to be the person whose name is subscribed to the within instrument and acknowledged that they executed the same.

Signature_____

12

# Exhibit "C"

## LOAN SERVICING AGREEMENT

THIS LOAN SERVICING AGREEMENT ("Loan Servicing Agreement") is made and entered into a s of the _____ of _____, 2005, by and among Integrated Financial Associates, Inc. a Nevada corporation (the "Servicing Agent"), and the following parties (individually, a "Participant" and collectivel y, the "Participants"):

### XXXXXXXXXXXXXX

The Servicing Agent and the P articipants are sometimes hereinafter referred to collectively as the "Parties," and singly as a "Party," as the context requires or permits.

Whereas Participant(s) have agreed to fund or purchase a _____ DOLL AR, ($_____) interest in a ll or a portion of a loan in the principal am ount of _____ ($_____) to _____, as Borrower, secured by a _____ Deed of Trust on real property (the "Loan"), said Loan designated by Servicing Agent as Loan Num ber _____, which loan bears interest at the investor rate of _____% (not including loan servicing fees as set forth in Section 5 of this agreement.)

And whereas it is the desire of the parties that Servicing Agent collect and distribute the payments received pursuant to the loan and to enforce the terms of said loan in accordance with the terms of the loan documents.

Now therefore, in consideration of the mutual terms, conditions and covenants contained herein, t he Parties agree as follows:

Unless otherwise expressly set forth in this Loan Servicing Agreement, each of the defined terms in this Loan Servicing Agreement shall have the same meaning as set forth in the Loan Agreement and the Loan Documents identified below.

1.   Participation:

(a)    Effective on the recording of the Trust Deed (the "Closing Date"), the Participant(s) he reby designates Servicing Agent as his/her/its agent for the purposes of collecting and disbursing the payments of principal and interest from the loan as well and enforcing, on behalf of Participant(s) the ter ms and conditions of the loan documents, including, but without limitation, the Note, Deed of Trust, Loan Agreement (whether titled Loan Agreem ent or Construction Loan Agreement) and Guaranties.

(b)    In order to facilitate the administration of the Loan by the Servicing Agent, the original Loan Docum ents remain in the possession of Servicing Agent and each P articipant hereby authorizes the Servicing Agent to execute and deliver, on behalf of Participant, any document which the Servicing Agent deems necessary and proper in its sole and absolute discretion in order to administer the Loan for the benefit of the Parties, including, but without limitation, demands for full or partial payoff, requests for full or partial reconveyances and notices of default.

1

(c)      Each Participant is entitled to his, her or its Participant's Share of the Principal and Interest payments. The Loan Fees and any extension fees are agreed to be compensation to the Servicing Agent for its efforts in arranging for and administering the Loan.

2.      Payments:

(a)      In the event that Borrower is not in default of the terms of the Loan, all payments received from or made on behalf of Borrower on the Loan, whether designated by Borrower as Interest, Principal or otherwise, shall be distributed to Participants in proportion to their respective interests in the Loan. In the event of any payments made after a notice of default has been filed on behalf of participants, any payments received will first be applied to reimbursements as set forth in section 5 of this agreement.

(b)      In the event the Servicing Agent is required to disgorge as a voidable preference in any insolvency proceeding brought by or against Borrower or Guarantor, any Interest and/or Principal payments received from Borrower or Guarantor, each Participant agrees upon demand to remit promptly to the Servicing Agent the Participant's Share of all such Interest and/or Principal.

3.      Duties of the Servicing Agent:

The Servicing Agent shall hold the Loan Documents as agent for the Participants. The Servicing Agent shall administer the Loan Documents and collect all payments due thereunder and shall promptly remit to each Participant the Participant's Share of all Interest payments and any Principal payments received from or made on behalf of Borrower. The Servicing Agent shall deliver to any Participant, upon request, an accounting of all Interest and any Principal received from or made on behalf of Borrower. The Servicing Agent shall notify each Participant upon the recording of a notice of default under the Loan Documents. The Servicing Agent shall not be liable to the Participants under this Loan Servicing Agreement, or otherwise, for any action taken or omitted or for any error in judgment, unless the same occurred because of the bad faith, willful or gross negligence of the Servicing Agent.

4.      Event of Default:

If an Event of Default occurs under the Loan Documents, the Servicing Agent shall contact each Participant with respect to the issue of commencing a foreclosure. The decision of a majority (51%) of the beneficial interests of record shall be binding on all participants and the undersigned Participant agrees to be bound by that determination, both pursuant to this agreement and the authority delegated pursuant to any Power of Attorney between Participant and the Servicing Agent. Additionally, in the event a foreclosure or deed in lieu of foreclosure results in the ownership of the property by the Participants, the decision of a majority (51%) shall be binding upon the Servicing Agent with respect to issues of the sale, leasing or encumbrance of the property.

Upon the commencement of a foreclosure, after polling the Participants as provided above, the Servicing Agent shall take such action or actions and institute such legal and other proceedings as it deems necessary and appropriate to enforce the Loan Documents and collect the Loan, including, without limitation, the foreclosure on the Collateral, and otherwise to protect the rights and interests of the Parties under the Loan Documents, all with or without prior notice or consultation with the Participants.

2

5.    Compensation of Servicing Agent:

The Servicing Agent shall be entitled to retain, from interest payments received, compensation in the form of a loan servicing fee equal to **1/2%** of the total loan amount, as indicated herein, payable to Servicing Agent monthly.  Said fee is in addition to any loan origination fees and extension fees paid at the inception or extension of the loan, unless and until there is a default in payment and the Servicing Agent commences collection of the loan or foreclosure upon the security for said loan.

From, the proceeds of any funds collected after the filing of a Notice of Default, the Participants shall reimburse Servicing Agent for all expenses incurred and paid for by the Servicing Agent pursuant to the authority granted to the Servicing Agent under the terms of this Agreement, which expenses may include but are not limited to costs of attorneys, title companies, and other third persons employed for the benefit of the Partnership, costs of borrowed money, taxes and assessments on any real property or interest therein, costs of obtaining zoning, variances, use permits relative to the property which is the subject of the Loan, environmental engineering, utilities, engineering, leasing agents, sales agents, insurances, and all similar expenses incurred in furtherance of this Loan Servicing Agreement.  The reimbursement of expenses as set forth in this section shall have precedence over all other distributions to the Participants, whether income, interest or capital.

Thereafter, distributions to the Participants shall be made of their Principal and the Interest on said Principal at the note rate.

Thereafter, interest is payable to the Servicing Agent for all advanced funds at the indicated loan note rate.

Thereafter, the Servicing Agent shall be entitled to receive a fee of 50% of all penalties collected pursuant to the note, 50% of the amount of default interest in excess of the stated interest collected and 50% of any Income realized in excess of the amount of the outstanding loan Principal and accumulated Interest.  Nothing contained herein, however, shall authorize the Servicing Agent to receive any sums which are not actually collected pursuant to this agreement.

6.    Notices:

All notices, requests, demands, directions, and other communications under this Loan Servicing Agreement shall be in writing and shall be mailed, postage prepaid, or personally delivered, or sent by facsimile transmission.  All such notices, requests, demands, directions, and other communications shall be effective if mailed, three (3) business days after posting; if personally delivered, upon delivery; and, if sent by facsimile transmission, upon transmission, provided that a written verification report of such transmission is maintained by the sender and a confirmation copy of the document transmitted is mailed to the recipient in the manner provided herein within twenty-four (24) hours after the time of transmission.

3

7.    <u>No Partnership</u>:

Neither the execution of this Loan Servicing Agreement, nor the sharing of interests in the Loan Documents and the Interest and Principal payable by Borrower thereunder, shall be deemed or construed to be the formation of a partnership or joint venture among the Servicing Agent and the Participants. The Parties understand and agree they are independent Parties.

8.    <u>Assignment</u>:

No Participant shall assign, delegate, pledge or hy pothecate its rights or duties hereun der without the prior written consent of the Servicing Agent, which consent shall not be unr easonably withheld, and any purported assignment without the Servicing Agent's prior written consent shall be absolutely void.

9.    <u>Termination</u>:

This Loan Servicing Agreement shall terminate upon payment in full of the Loan, or the termination of the Loan Documents, and the distribution by the Servicing Agent to each remaining Participant of the Participant's Share of Principal and Interest payments received from or made on behalf of Borrower, or in the event of a sale of the Collateral after a foreclosure proceeding, upon the distribution of the net proceeds thereof to each Participant in accordance with each Participant's Share. In addition, to the extent that the Servicing Agent receives reimbursement from Borrower, or through the sale of the Collateral, of any costs and expenses paid by the Participants in connection with the enforcement of the Loan Documents, the Servicing Agent shall refund such costs and expenses on a prorata basis to the Participants who paid the same.

10.    <u>Miscellaneous</u>:

(a)    This Loan Servicing Agreement constitutes the entire agreement among the Parties pertaining to the subject matter hereof and supersedes all prior and contem poraneous agreements, representations, warranties and understa ndings of the Parties with respect to the subject matter hereof. No modification of this Loan Servicing Agreement shall be binding unless executed in writing by all of the Parties.

(b)    No waiver of any of the provisions of this Loan Servicing Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unle ss executed in writing by the Party making the waiver.

(c)    This Loan Servicing Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The facsimile transmission of a counterpart of this Loan Servicing Agreement shall be the same as the delivery of an original.

(d)    This Loan Servicing Agreement shall be binding on and shall inure to the benefit of the Parties and their respective heirs, legal representatives, suc cessors, and assigns (subject, however, to the restrictio n on assignments set forth in Paragraph 9 hereof ).

(e)    In the event that any provision of this Loan Servicing Agreement shall be held invalid and

4

unenforceable, such provision shall be severed from, and such invalidity or unenforceability shall not be construed to have any effect on, the remaining provisions of this Loan Servicing Agreement.

(f)    Each Party agrees to execute and deliver all documents and to perform all further acts as may be reasonably necessary to carry out the intent and purposes of this Loan Servicing Agreement.

(g)    This Loan Servicing Agreement shall be governed by and construed in accordance with the laws of the State of Nevada without regard to its conflicts of laws provisions.

(h)    If any action or arbitration proceeding is brought by any Party on account of any breach hereof or to enforce or interpret any of the provisions hereof, or if any Party incurs attorney's fees on account of any breach of any of the provisions hereof, the Party prevailing in enforcing its rights hereunder shall be entitled to recover from the non-prevailing Party or Parties all costs and expenses, including attorney's fees reasonably incurred in connection therewith.

IN WITNESS WHEREOF, the Parties have signed this Loan Servicing Agreement as of the date first above written.

Servicing Agent:                    Integrated Financial Associates, Inc.


By:_____


Participant(s):



_____  _____

# Exhibit "D"

# NOTE PURCHASE
# AND SALE AGREEMENT

THIS NOTE PURCHASE AND SALE AGREEMENT (the "Agreement") is entered into as of the 20ᵗʰ day of July, 2011 (the "Effective Date"), by and between **INTEGRATED FINANCIAL ASSOCIATES, INC.,** a Nevada corporation (the "Seller"), and **BRYTAR COMPANY,** a *[Texas limited liability company]*, or its assigns ("Buyer").

## WITNESSETH:

**WHEREAS,** Seller owns and desires to sell certain Assets (as defined herein) owned or controlled by Seller; and

**WHEREAS,** Buyer has reviewed and evaluated the Assets to Buyer's full satisfaction and desires to purchase the Assets.

**NOW, THEREFORE,** in consideration of the mutual promises herein set forth and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Buyer agree as follows:

## ARTICLE I
## DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings indicated:

**"Agreement"** means this Note Purchase and Sale Agreement, including all Exhibits and Schedules hereto.

**"Approval Date"** means the date following the last day of the Feasibility Period, defined below.

**"Assets"** means the Note, which is being purchased by the Buyer

**"Bankruptcy Case"** means the matter of In re: Integrated Financial Associates, Inc., Case No. BK-11-13537-BAM pending in the United States Bankruptcy Court District of Nevada, Las Vegas Division.

**"Bankruptcy Court"** means the United States Bankruptcy Court, District of Nevada, Las Vegas Division.

**"Bankruptcy Court Approval"** means the date that an order by the Bankruptcy Court in Seller's Bankruptcy Case approving the sale of the Assets, free and clear of all liens and claims of Seller's creditors becomes a final, non-appealable order.

**"Business Day"** means any day on which Seller is open for business other than a Saturday, a Sunday or a federal holiday.

**"Claim"** means any claim, action, suit or other actual or threatened proceeding, loss, judgment, damage, liability, cost and expense.

**"Closing Date"** means the day which is fifteen (15) days from the Bankruptcy Court Approval Date.

**"Current Balance"** means the unpaid principal balance of the Loan in the amount of Six Hundred Seventy-Five Thousand and No/100 Dollars ($675,000.00).

**"Deed of Trust"** means that certain Deed of Trust, Security Agreement and Assignment of Rents, a copy of which is attached hereto as Exhibit "A", dated October 30, 2006, executed by 1835 Nevassee Investments, LLC, as Trustor, to Fidelity National Title Company, as Trustee, and Integrated Financial Associates, Inc., as Beneficiary, recorded November 7, 2006 as Instrument No. 06181379 in the County Recorder's Office for Shelby County, Tennessee.

**"Effective Date"** means the date this Agreement is executed and delivered to Escrow Agent.

**"Escrow Agent"** means Benchmark Title Services, 7019 Hillcrest Ave., Dallas, TX 75205.

**"Feasibility Period"** means five (5) business days following Bankruptcy Court Approval.

**"Loan"** means that certain loan evidenced by the Loan Documents.

**"Loan Documents"** means the Note and the Deed of Trust and any and all documents and instruments executed by Obligor.

**"Note"** means that certain Promissory Note Secured by First Deed of Trust dated October 30, 2006 executed by Obligor in favor of Seller in the original principal amount of Six Hundred Seventy-Five Thousand and No/100 Dollars ($675,000.00).

**"Obligor"** means 1835 Nevassee Investments, LLC, a Nevada limited liability company.

**"Purchase Price"** means the amount, in dollars, to purchase the Loan as stated in Section 2.3.

**"Title Policy"** means that certain existing lender's policy of title insurance insuring Seller's interest in the Deed of Trust, issued by Fidelity National Title Insurance Company on November 7, 2006 as Policy No. TN2816-10-20061483-2006.27107-72791572, with insurance in the amount of $675,000.

**"Transfer Documents"** means all documents that are required to be delivered on the Closing Date by Seller or the Buyer pursuant to Section 3.1.

## ARTICLE II
## PURCHASE AND SALE OF ASSETS

Section 2.1.    <u>Agreement to Sell and Purchase the Assets</u>.  Seller agrees to sell, and Buyer agrees to purchase all of Seller's right, title and interest in and to the Assets, subject to the terms, provisions, conditions, limitations, waivers and disclaimers set forth in this Agreement, free and clear of all liens, claims and encumbrances and subject to Bankruptcy Court approval as set forth in Section 2.4.

Section 2.2.    <u>Agreement to Assign/Buyer's Right to Act</u>.  On or before the Closing Date, Seller shall deliver to Escrow Agent an Assignment of Deed of Trust, in the form of Exhibit B hereto, executed by an authorized representative of Seller, which documents shall sell, transfer, assign,

set-over, quitclaim and convey, in each case without recourse (except as expressly provided for in Article VI and VIII of this Agreement), to Buyer all right, title and interest of Seller in and to the Assets.

Section 2.3.    Purchase Price/Payment.    On or before 5:00 p.m. EST on the Closing Date, Buyer shall deliver to Escrow Agent the Purchase Price of Six Hundred Fifty Thousand Dollars ($650,000). All of such funds must be in immediately available funds in United States Dollars by cashier's check or wire transfer.

Section 2.4    Bankruptcy Court Approval.    Buyer's obligation to purchase the Assets is expressly contingent upon the issuance of a final, non-appealable court order by the Bankruptcy Court in Seller's Bankruptcy Case approving the sale of the Assets, free and clear of all liens and claims of Seller's creditors. Seller's failure to obtain such an order by the Bankruptcy Court within sixty (60) days of the Effective Date, unless otherwise extended in writing by the Buyer, is a default of the Seller and Buyer will be released from any and all performance required under this Agreement.

Section 2.5    Stalking Horse Procedures.    In the event that the Seller chooses, or the Bankruptcy Court orders that the Assets be sold at auction, the Seller agrees that Buyer will be treated as a stalking horse bidder and that stalking horse procedures, as agreed upon by the Buyer and Seller and subject to Bankruptcy Court approval, will be put in place to protect Buyer. If such procedures are not approved to the Buyer's satisfaction, the Buyer will be released from any liability under this Agreement and refunded any amounts paid pursuant hereto.

Section 2.6    No Assumption of Liabilities.    The Buyer expressly disclaims any assumption of any liabilities whatsoever in connection with purchasing the Assets.

## ARTICLE III
## TRANSFER OF ACCOUNTS AND DOCUMENTS

Section 3.1.    Assignment of Assets and Documents.    On the Closing Date, Seller shall execute and deliver or make available to Buyer the (i) the Assignment of Deed of Trust, (ii) an allonge to the Note endorsing Seller's rights in the Note to Buyer, (iii) an assignment of Seller's rights under the Title Policy, whether by endorsement or causing the insurer to issue a new policy in favor of Buyer, and (iv) such other documents as are necessary, proper or appropriate for the legal transfer of Seller's right, title and interest in and to the Assets purchased pursuant to this Agreement (collectively, the "Transfer Documents").

## ARTICLE IV
## DEPOSIT AND ESCROW

Section 4.1    Deposit. Within five (5) days of the Effective Date, Purchaser shall deposit in escrow with Escrow Agent the sum of TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($25,000.00) (the "Deposit"). If the purchase and sale of the Assets as contemplated hereunder is consummated, the Deposit shall be applied as a credit to the Purchase Price due from Buyer at Closing. If the Seller fails to obtain a final, non-appealable court order by the Bankruptcy Court in Seller's Bankruptcy Case approving the sale of the Assets, free and clear of all liens and claims of Seller's creditors before the Approval Date, the Seller will be in default under this Agreement and the Deposit will be released back to Buyer on the Approval Date. Unless this Agreement is terminated by the Buyer or the Seller fails to obtain Bankruptcy Court approval as

3

stated herein, then upon the expiration of the Feasibility Period, the Deposit shall become non-refundable and shall be released to the Seller.

Section 4.2    Escrow Agent. It is understood and agreed that the duties of the Escrow Agent are purely ministerial in nature.  The Escrow Agent shall not be liable to the Seller or Buyer, or to anyone else, for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or negligence.  The Escrow Agent may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by the Escrow Agent), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained), which is reasonably believed by the Escrow Agent to be genuine and to be signed or presented by the proper person or persons.  The Escrow Agent shall not be bound by any notice or demand, or any waiver, modification, termination or rescission of this Agreement or any of the terms hereof, unless evidenced by a final order or judgment entered by a court of competent jurisdiction, or a writing delivered to the Escrow Agent signed by the proper party or parties and, if the duties or rights of the Escrow Agent are affected, unless it shall give its consent thereto.

If for any reason the Closing does not occur and either party makes a written demand upon the Escrow Agent for payment or refund, as the case may be, of all or any portion of the Deposit, including any additional payments deposited into escrow pursuant to this Agreement, such party shall, simultaneously with its written demand upon the Escrow Agent, give written notice of such demand to the other party by the same means of communication employed by such party to make demand upon the Escrow Agent. If the Escrow Agent does not receive a written objection from the other party to the proposed payment or refund, as the case may be, within five (5) business days after the receipt of such written demand, the Escrow Agent is hereby authorized to make such payment or refund, as the case may be; provided, however, if Escrow Agent receives timely written objection from the other party, the Escrow Agent shall continue to hold such amount until otherwise directed by written instructions from both Parties or until a judgment on the determination is entered by a court of competent jurisdiction, whereupon the Escrow Agent shall make disposition thereof in accordance with such instructions or such order.  Notwithstanding the foregoing, if the Escrow Agent receives written notice that Buyer has terminated this Agreement prior to the Closing Date or if the Seller fails to obtain a final, non-appealable court order by the Bankruptcy Court in Seller's Bankruptcy Case approving the sale of the Assets by the Approval Date, Escrow Agent is hereby authorized to immediately refund to Buyer any and all deposits made by Buyer without Seller's consent or the notice and five-day waiting period requirements set forth above.

Section 4.3    Escrow Expenses.  Buyer shall pay Escrow Agent any and all costs associated with Escrow Agent's performance of its obligations hereunder.

Section 4.4    Close of Escrow.  On the Closing Date, or upon completion of the requirements of Sections 2.3 and 3.1 above, whichever occurs sooner, Escrow Agent shall (i) record the Assignment of Deed of Trust, and (ii) wire transfer the balance of the Purchase Price to Seller..

## ARTICLE V
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE BUYER

Buyer hereby represents warrants and covenants, as of the date of this Agreement, as of the Closing Date that:

4

Section 5.1.    Independent Evaluation.  Buyer warrants and represents that it is a sophisticated investor, has knowledge and experience in financial and business matters that enable it to evaluate the merits and risks of the transaction contemplated by this Agreement, and that its decision to purchase the Assets pursuant to this Agreement is and was based upon the Buyer's own independent evaluation of information deemed relevant to Buyer, and of the information made available by Seller or Seller's personnel, agents, representatives or independent contractors to Buyer, which Buyer acknowledges and agrees were made available to it and which it was given the opportunity to inspect to its complete satisfaction.  Buyer acknowledges that no employee, agent, representative or independent contractor of Seller has been authorized to make, and that Buyer has not relied upon, any statements other than those specifically contained in this Agreement.  Buyer agrees and represents that the Assets and any documentation made available to it were an adequate and sufficient basis on which to determine whether to purchase the Assets.  Buyer has made such independent investigations as it deems to be warranted into the nature, validity, enforceability, collectability, and value of the Assets, and all other facts it deems material to its purchase and is entering into this transaction solely on the basis of that investigation and Buyer's own judgment.

Section 5.2.    Authorization.  Buyer is duly and legally authorized to enter into this Agreement and has complied with all laws, rules, regulations, charter provisions and operating agreement in which it may be subject and that the undersigned representative is authorized to act on behalf of and bind Buyer to the terms of this Agreement.

Section 5.3.    Binding Obligations.  Assuming due authorization, execution and delivery by each other party hereto, this Agreement, and all of the obligations of Buyer hereunder are the legal, valid and binding obligations of Buyer, enforceable in accordance with the terms of this Agreement, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law).

Section 5.4.    Execution and Delivery.   The execution and delivery of this Agreement by the Buyer and the Buyer's performance and compliance with the terms of this Agreement will not:

(a)    violate the Buyer's charter documents or operating agreement,

(b)    violate any administrative or judicial decree or order or any material law, rule or regulation to which it is subject, or

(c)    constitute a default (or, an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material contract, agreement or other instrument to which Buyer is a party or which may be applicable to the Buyer or any of its assets; or result in the creation of a lien on any of its assets.

Section 5.5.    Pending Proceedings.  There is no proceeding, action, investigation or litigation pending or, to the best of Buyer's knowledge, threatened against the Buyer which, individually or in the aggregate, may have a material adverse effect on this Agreement or any action taken or to be taken in connection with the Buyer's obligations contemplated herein, or which would be likely to impair materially its ability to perform under the terms of this Agreement.

5

Section 5.6.    Consents.   Other than the consent of the Bankruptcy Court in the Bankruptcy Case, no consent, approval, authorization, or order of, registration or filing with, or notice to, any governmental authority or court is required under federal laws, or the laws of any jurisdiction, for the execution, delivery, and performance of or compliance by the Buyer with this Agreement or the consummation of any other transaction contemplated hereby.

Section 5.7.    Economic Risk.   The Buyer acknowledges, understands and agrees that the acquisition of these Assets involves a high degree of risk and is suitable only for persons or entities of substantial financial means who have no need for liquidity and who can hold the Assets indefinitely or bear the partial or entire loss of the value thereof.

Section 5.8.    Survival.    The representations and warranties set forth in this Section shall survive the Closing, subject to the provisions below with respect to the limitation of remedies.

# ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

Section 6.1.    Seller hereby represents, warrants, and agrees that as of date of this Agreement and as of the Closing Date:

(a)    Once Seller obtains a final, non-appealable court order by the Bankruptcy Court in Seller's Bankruptcy Case approving the sale of the Assets, free and clear of all liens and claims of Seller's creditors, Seller is duly and legally authorized to execute, deliver and perform this Agreement, and such execution, delivery and performance complies with all laws, rules, regulations, charter provisions and by laws to which it may be subject.

(b)    Assuming the due authorization, execution and delivery of this Agreement by each other party hereto, this Agreement and all of the obligations of Seller hereunder are the legal, valid, and binding obligations of Seller, enforceable in accordance with the terms of this Agreement, except as such enforcement may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally, and by general principals of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(c)    Subject to Section 2.4 of this Agreement, Seller is the lawful holder of the Assets and the Loan Documents and is duly and legally authorized to sell, transfer, convey and assign its rights therein.   Other than a reduction in the original principal balance of the Loan, Seller has not modified the Assets or Loan Documents in any respect, or executed any instruments of release, cancellation or satisfaction.

(d)    Seller warrants and represents that it has no dealings with any broker, sale advisor or agent in connection with this Agreement, or if Seller has, any commission or fee associated with the sale of the Assets to Buyer, shall be Seller's responsibility.

(e)    Seller warrants and represents that to the best of Seller's knowledge there is no pending or threatened litigation associated with Assets.

Section 6.2.    Survival.   The representations and warranties set forth in this Section shall survive the Closing Date, subject to the provisions below with respect to the limitation of remedies.

6

## ARTICLE VII
## FORM OF SALE

Section 7.1.   Form of Sale. Sale of Seller's rights in the Assets is made without recourse, representation or warranty, express or implied, except as provided in this Agreement.  Buyer acknowledges and agrees that Seller's rights in the Assets are being sold "service released", "as-is, where-is", "with all faults" and "without recourse."  Buyer hereby releases and forever discharges each Seller, and each of Seller's agents, servants, directors, officers, employees, successors, assigns and affiliates (all such persons herein "Related Parties") of and from any and all causes of action, claims, demands, and remedies of whatever kind and nature that Buyer has or may in the future have against Seller or any of the Related Parties in any manner on account of, arising out of or related to this transaction;  provided, however that such release and discharge shall not apply to any cause of action, claim demand or remedy against Seller arising out of Seller's breach of this Agreement or the indemnification provisions of Article IX of this Agreement.

## ARTICLE VIII

## [Intentionally Omitted]

## ARTICLE IX
## MUTUAL INDEMNIFICATION

From and after the date of this Agreement, Buyer shall indemnify and hold harmless Seller and Related Parties from and against any and all liability for, and from and against any and all losses or damages Seller may suffer as a result of any claim, demand, cost, expense, or judgment of any type, kind, character or nature (including reasonable attorneys' fees), which Seller shall incur or suffer as a result of  any act or omission of Buyer or Buyer's agents in connection with the Assets after the Closing Date.

From and after the date of this Agreement, Seller shall indemnify and hold harmless Buyer and Related Parties from and against any and all liability for, and from and against any and all losses or damages Buyer may suffer as a result of, any claim, demand, cost, expense, or judgment of any type, kind, character or nature (including reasonable attorneys' fees), which Buyer shall incur or suffer as a result of any act or omission of Seller or Seller's agents in connection with the Assets prior to the Closing Date.

## ARTICLE X
## NOTICE

Unless otherwise provided for herein, notices and other communications required or permitted hereunder shall be in writing (including a writing delivered by facsimile transmission) and shall be deemed to have been duly given (a) when delivered, if sent by registered or certified mail return receipt requested, (b) when delivered, if delivered personally, (c) when received, but no later than the second Business Day following mailing, if sent by overnight mail or overnight courier, or (d) when received, if sent by facsimile, in each case to the parties at the following addresses (or at such other addresses as shall be specified by like notice):

7

If to the Buyer:

    Brytar Company
    4228 N. Central Expressway, Suite 110
    Dallas, TX 75206
    Attention: Michael O. Provosty, Jr.
    Telephone: (214) 522-3300
    Facsimile: (214) 522-0303

If to the Seller:

    Integrated Financial Associates, Inc
    3311 S. Rainbow Blvd., Suite 209
    Las Vegas, NV 89146
    Attention: Bill Dyer, President
    Telephone: (702) 257-0021
    Facsimile: (702) 257-0031

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

Section 11.1  <u>Severability</u>.  If any term, covenant, condition or provision hereof is unlawful, invalid, or unenforceable for any reason whatsoever, and such illegality, invalidity, or unenforceability does not affect the remaining parts of this Agreement, then all such remaining parts hereof shall be valid and enforceable and have full force and effect as if the invalid or unenforceable part had not been included.

Section 11.2  <u>Rights Cumulative: Waivers</u>.  The rights of each of the parties under this Agreement are cumulative and may be exercised as often as any party considers appropriate under the terms and conditions specifically set forth.  The rights of each of the parties hereunder shall not be capable of being waived or varied otherwise than by an express waiver or variation in writing.  Any failure to exercise or any delay in exercising any of such rights shall not operate as a waiver or variation of that or any other such right.  Any defective or partial exercise of any of such rights shall not preclude any other or further exercise of that or any other such right.  No act or course of conduct or negotiation on the part of any party shall in any way preclude such party from exercising any such right or constitute a suspension or any variation of any such right.

Section 11.3  <u>Headings</u>.  The headings of the Articles and Sections contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of the Agreement or any provision hereof.

Section 11.4  <u>Construction</u>.  Unless the context otherwise requires, singular nouns and pronouns when used herein, shall be deemed to include the plural of such noun or pronoun and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender.

Section 11.5  <u>Assignment</u>.  This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including the exhibits and schedules

hereto, shall be binding upon, and shall inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors, and assigns.

Section 11.6    Prior Understandings.  This Agreement supersedes any and all prior discussions and agreements between Seller and Buyer with respect to the purchase of the Assets and other matters contained herein.

Section 11.7.   Integrated Agreement.   This Agreement and all Exhibits hereto constitute the final complete expression of the intent and understanding of the Buyer and the Seller.  This Agreement shall not be altered or modified except by a subsequent writing, signed by Buyer and Seller.

Section 11.8.   Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall constitute one and the same instrument, and either party hereto may execute this agreement by signing any such counterpart.

Section 11.9.   Governing Law/Choice of Forum.   This Agreement shall be construed, and the rights and obligations of Seller and Buyer hereunder determined, in accordance with the laws of the State of Nevada.

Section 11.10. No Third-Party Beneficiaries.   This Agreement is for the sole and exclusive benefit of the parties hereto, and none of the provisions of this Agreement shall be deemed to be for the benefit of any other person or entity.

Section 11.11 Expenses.  Except as otherwise expressly provided in this Agreement, Buyer and Seller will each bear its own out-of-pocket expenses, including fees and disbursements of its attorneys, brokers, consultants and any other agents or representatives, in connection with the transaction contemplated by this Agreement.

**[Signatures Appear on Following Page]**

9

**IN WITNESS WHEREOF**, the parties hereto have executed this NOTE PURCHASE AND SALE AGREEMENT as of the day and year first above written.

**BUYER:**
Brytar Company    OR ITS ASSIGNS

By: _____
Name: _____
Title: _____

**SELLER:**
Integrated Financial Associates, Inc.

By: _____
Name: William Dyer
Title:   President

AGREED TO AND ACCEPTED AS TO THE
PROVISIONS SET FORTH IN ARTICLE IV

**ESCROW AGENT:**

Benchmark Title Services

By: _____
Name: _____
Title: _____

# Exhibit A

## Deed of Trust

# Exhibit "E"

April 25, 2011


    *Re:*   ***IFA Loan No. 26-041 / Nevassee Investments***

Dear :

   As you will recall, this is a $675,000 loan on an office building in Memphis.  The loan is in foreclosure, but the borrower filed bankruptcy to prevent the sale.   We have filed a motion for relief from stay and a hearing is scheduled for May 6, 2011.  In order to prepare for the hearing, we obtained an appraisal on the property that provided a market value of approximately $945,000.  The appraiser, however, indicated that in order to make the building "competitive", any potential buyer would have to spend roughly $2.5MM in order to bring the project's operating systems up to market level.

   The owner of the property has been consistently operating with an 80% vacancy ratio and below market rents for the last 18 months.  They have proposed a plan of reorganization that would commence interest payments on the current note for a period of 5 years at 7%.  We have objected to the plan as not confirmable, because the building has not generated sufficient income for the last 24 months to substantiate such a proposal.

   We have received an offer from a local Memphis businessman to purchase our note and deed of trust on the property for $650,000.  The terms would require an earnest money deposit of $50,000 and an all cash sale in 21 days.  The purchase is contingent on our ability to obtain relief from stay but not to foreclose on the deed of trust.  He simply wants to buy our position and foreclose on his own.  **There are no commissions or closing costs associated with the sale.**

   We are asking you to vote on whether or not to approve the offer set forth above on the attached ballot and fax, mail, email, or deliver it to our offices as soon as possible.  Pursuant to the NRS §645B.340, if the majority of the investors approve the proposed sale of the note, the remainder of the investors are bound by that vote.  If the sale is approved, proceeds will be distributed together with a complete accounting.  Some investors in the loan advanced funds to pay for legal fees and the appraisal.  They will be repaid first, plus interest at the rate of 15%.


Very truly yours,



Bill Dyer

To:         Integrated Financial Associates, Inc.

From:

Re:         IFA Loan No. 26-041 / 1835 Nevassee Investments, LLC

With respect to my investment in Loan No. 26-041, I select the option below.

Please provide your vote in the space allowed below, sign, and return the form to IFA by mail, email, or fax to (702) 257-0031.

**VOTE FOR ONE**

_____    I agree to sell the note and deed of trust for $650,000 under the terms set forth in the IFA letter dated April 25, 2011.

_____    I **do not** agree to sell the note and deed of trust for $650,000.  I understand that, if the sale is not approved, I will be required to pay the legal costs associated with the relief from stay action plus the foreclosure expenses and may be required to pay additional amounts to maintain the property in order to market it in the future.

Account No.

_____      _____

Signature(s)                            Date

## 26-041 Nevassee Investor Election  - April 2011
*(Sell Note & DOT $650,000)*

| Lender Name | Principal Balance | Pct Owned | Agree | Does not agree |
|---|---|---|---|---|
| Bebe Irrevocable Trust | $15,000.00 | 2.222% | | |
| Dale Wynn Living Trust | $63,000.00 | 9.333% | | |
| Integrated Financial Associates | $111,000.00 | 16.444% | 1 | |
| Joe Barresi and Lydia King, JTWRS | $50,000.00 | 7.407% | 1 | |
| John Claridy or Karen Inghram | $71,000.00 | 10.519% | 1 | |
| Kenneth R. Wynn Family Trust | $165,000.00 | 24.444% | 1 | |
| SCWAK, LLC | $200,000.00 | 29.630% | 1 | |
| | $675,000.00 | 99.999% | 5 | |
| **By Percent Ownership:** | | **88.44%** | | **0.00%** |

# Exhibit "F"

ALAN R. SMITH, ESQ.
Nevada Bar No. 1449
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada 89501
Telephone (775) 786-4579
Facsimile (775) 786-3066
*Email: mail@asmithlaw.com*

*ELECTRONICALLY LODGED:*

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

LAS VEGAS DIVISION

—ooOoo—

In Re:

INTEGRATED FINANCIAL
ASSOCIATES, INC., a Nevada
Corporation

        Debtor.

_____/

Case No. BK-11-13537-LBR
Chapter 11

**ORDER APPROVING DEBTOR'S
MOTION TO APPROVE SALE OF
ASSETS TO BRYTAR COMPANY**

Hearing Date:    [OST Pending]
Hearing Time:    [OST Pending]

    The hearing on the Debtor's Motion to Approve Sale of Assets to Brytar Company

(the "Motion") was conducted by this court of the _____ day of _____ , 2011 at

_____ a.m./p.m.   The Debtor appeared with its counsel Alan R. Smith, Esq.

Objections to the sale were brought by _____, through their counsel

_____.   The Court considered the pleadings and papers on file both for and

against the Motion, as well as the oral arguments of counsel. The Court entered its findings

1  of fact and conclusions of law on the record, which are hereby incorporated by reference

2  herein in accordance with Fed.R. Civ. P. 52(a), as incorporated pursuant to Fed.R. Bankr.

3  Proc. 7052, and made applicable by Fed.R. Bankr. Proc. 9014(c), good cause appearing,

4        IT IS HEREBY ORDERED AS FOLLOWS:

5     1.    The Debtor's Motion to Approve Sale of Assets to Brytar Company is

6        approved.

7     2.    The Debtor is authorized, through its representatives, to execute and deliver

8        such documents and take such other actions as shall be required in order to

9        consummate the sale.

10     3.    All proceeds from the sale shall be deposited into the Debtor In Possession

11        Account.

12  In accordance with Local Rule 9021, counsel submitting this document certifies that the
   order accurately reflects the court's ruling and that (check one):

13     ☐    The court has waived the requirement set forth in LR 9021(b)(1).

14     ☐    No party appeared at the hearing or filed an objection to the motion.

15     ■    I have delivered a copy of the proposed order to all counsel who appeared at

16        the hearing, and any unrepresented parties who appeared at the hearing, and
         each has approved or disapproved the order, or failed to respond, as indicated

17        below [list each party and whether the party has approved, disapproved, or
         failed to respond to the document]:

18        Counsel appearing:

19        APPROVED/DISAPPROVED

20        [LAW FIRM NAME HERE]

21

22        By:_____
             [ATTORNEY NAME HERE]

23            Attorney for *

24        Unrepresented parties appearing:  **NONE**.

25        Trustee:  No Appearance at hearing; no additional service required.

26     ☐    I certify that this is a case under Chapter 7 or 13, that I served a copy of this
         order with the motion pursuant to LR 9014(g), and that no party has objected

27        to the form or content of this order.

28  ///

1  RESPECTFULLY SUBMITTED BY:

2  LAW OFFICES OF ALAN R. SMITH
   By:_____/s/ Alan R. Smith_____
3    ALAN R. SMITH, ESQ.
     Attorney for Debtor

4                                    ###

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28