SHEA & CARLYON, LTD.
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 02666
701 E. Bridger Ave., Suite 850
Las Vegas, NV 89101
Telephone: (702) 471-7432
Facsimile: (702) 471-7435
E-mail: ccarlyon@sheacarlyon.com

Attorney for the Official Unsecured
Creditors' Committee of Integrated
Financial Associates, Inc.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>INTEGRATED FINANCIAL ASSOCIATES, INC.,<br><br>Debtor. | Case No. BK-S-11-13537-LBR:<br><br>**OPPOSITION TO DEBTOR'S MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT (CLEVENGER/MOUNTAIN HOUSE)**<br>Date: August 22, 2012<br>Time: 2:00 p.m. |

The Official Unsecured Creditors' Committee of Integrated Financial Associates, Inc. (the "Committee"), by and through its undersigned counsel, files this Opposition to Motion for Order Approving Settlement Agreement (the "Opposition"). This Opposition is based on the following memorandum of points and authorities, the pleadings on file with the Court, and any arguments or exhibits produced at the hearing on this matter.

DATED this ___ day of August, 2012.

SHEA & CARLYON, LTD.

_/s/_____
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 02666
701 Bridger Ave., Suite 850
Las Vegas, Nevada 89101
*Attorney for the Official Unsecured Creditors' Committee of Integrated Financial Associates, Inc.*

## Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................................... 2
   I.   INTRODUCTION ............................................................................................................... 2
   II.  THE PROPOSED SETTLEMENT ...................................................................................... 3
       A.   Background .................................................................................................................. 3
       B.   The Mountain House Loans ....................................................................................... 3
       C.   The Proposed Settlement ............................................................................................ 4
       D.   The Guarantor ............................................................................................................. 5
   III.  LEGAL STANDARD .......................................................................................................... 5
   IV.  ARGUMENT ....................................................................................................................... 6
       A.   There is no Compulsion to Settle Litigation .............................................................. 6
       B.   The Terms of the Settlement Make Collection More Difficult ................................. 7
       C.   The Issues Appear Straightforward with No Need for Settlement ............................. 8
       D.   The Unsecured Creditors Committee Does Not Approve This Settlement ............... 8
   V.   CONCLUSION ................................................................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Integrated Financial Associates ("IFA") has two loans secured by deeds of trust to the Mountain House Entities. Those deeds amount to $5,600,000, and are personally guaranteed by Michael Clevenger (the "Guarantor"). Clevenger's net worth is -$78,717,400, and he has indicated he is prepared to file for Chapter 7 bankruptcy. Nonetheless, Clevenger and the Debtor wish to cancel Clevenger's $5,600,000 personal guarantee in exchange for $1,000,000 in unsecured promissory notes payable in five years with interest payable at maturity. Using the reasonableness standard of A & C Properties, Debtor has failed to meet its burden showing the settlement is reasonable. In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986). Therefore, Debtor's motion should be denied.

///

///

## II.
## **THE PROPOSED SETTLEMENT**

**A.     Background**

1. Integrated Financial Associates, Inc. ("Debtor") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code on March 14, 2011 (the "Petition Date").

2. Prior to the Petition Date, Debtor's business was to act as a "hard money lender," making loans to developers secured by real estate.

3. Prior to the Petition Date, the company would make loans up to $30 million, sell fractionalized interests in the loans to investors, and service the loans for investors.

4. Debtor continues to operate its business and manage its properties as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

5. On August 30, 2011, the Office of the United States Trustee appointed the Committee pursuant to 11 U.S.C. § 1102(a)(1) and (b)(1). [Docket No. 310.]

**B.     The Mountain House Loans**

6. In 2006, IFA made two loans secured by deeds of trust to the Mountain House entities on properties located in San Jacinto County, CA.

7. IFA Loan No. 26-019 involves a first trust deed in the amount of $3,300,000 encumbering 11.38 acres of unimproved land with an approved tentative tract map for 53 single family lots.

8. IFA Loan No. 26-020 involves a second lien trust deed in the amount of $2,300,000 encumbering the same 11.38 acre tract as well as a third lien trust deed encumbering a parcel tentatively mapped for 286 residential lots and previously encumbered a parcel mapped for 135 acre commercial project, all located in Mountain House.

9. Michael Clevenger executed personal guarantees in connection with both loans.

10. IFA sold a majority of the interests in the Mountain House Loans, in fractional undivided interests, to multiple investors. IFA retained less than a 1% interest in Loan No. 26-019, and a 40.3% interest in Loan No. 26-020.

11. IFA estimates the cost to foreclose Loan No. 26-019 would be at least $40,000, and the cost to foreclose Loan No. 26-020 would be at least $30,000. Debtor's Motion for Order Approving Settlement at 2:25-27.

12. Debtor's Motion to Approve Settlement estimates the cost to pursue the Guarantor in California State Court may exceed $50,000. Id., at 3:1-3.

13. In both loans, the majority interest of the Loan Investors (including the Debtor as to its 40.3% interest in Loan No. 26-020) have previously voted against expending the funds to foreclose or to file a suit against the guarantor. Id., at 3:4.

C. **The Proposed Settlement**

14. IFA Loan 26-019 has a balance of $3,300,000 personally guaranteed by the Guarantor. In exchange for cancelling that guarantee, Guarantor has offered a $600,000 unsecured promissory note with 6% annual interest payable in five years. No interest will be paid until maturity. 51.36% of investors have voted in favor of that settlement, with 6.06% opposed and 42.58% not voting. Debtor's Motion for Order Approving Settlement at 3:19-22.

15. IFA Loan 26-020 has a balance of $2,300,000 personally guaranteed by the Guarantor. In exchange for cancelling that guarantee, Guarantor has offered a $400,000 unsecured promissory note with 6% annual interest payable in five years. No interest will be paid until maturity. 58.04% of investors have voted in favor of that settlement, with 3.26% opposed and 38.70% not voting. IFA's vote in favor of settlement represents 40.3% of that vote. Id.

16. The Loan Investors will be required to convert their undivided beneficial interests in the Mountain House Loans into identical membership interests in two separate limited liability companies to be managed by the Debtor. The investors voting in favor of the Settlement also

agree to convert their interests in the Mountain House Loans to membership interests in LLCs. Debtor will receive management fees to manage these entities, at a rate yet to be determined.

17. In the event of default the Debtor, as the manager of the various LLCs, may take action to enforce the notes. The Debtor proposes the cost of such litigation be borne by the members of the separate LLCs.

**D.    The Guarantor**

18. IFA has received the Guarantor's financial statements. IFA has indicated that the Guarantor's net worth, including contingent liabilities related to other guarantees, is presently -$78,717,400. Debtor's Motion for Order Approving Settlement at 4:16-19.

19. The Guarantor is attempting to resolve all of his contingent liabilities with settlements similar to the one proposed by Debtor. Id., at 4:19-20. However, there is no assurance that all creditors have or will entered into comparable settlements, nor that the Guarantor will be restrained from uneven distribution (or wasting) of assets or income.

20. The Guarantor has indicated if he is unsuccessful in settling his liabilities, he is prepared for file Chapter 7 bankruptcy. Id., at 4:20-21.

## III.
## LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 9019(a) governs compromises and settlements in bankruptcy. It provides, in pertinent part:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Federal Rule of Bankruptcy Procedure 9019(a).

Before a court can approve a compromise and settlement, it must find that the compromise is fair and equitable. In re A&C Properties, 784 F.2d 1377 (9th Cir. 1986), cert

denied, 479 U.S. 854 (1986). In determining if the settlement or compromise is fair and equitable the court must consider:

    (a) The probability of success in a litigation;

    (b) The difficulties, if any, to be encountered in the matter of collection;

    (c) The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it;

    (d) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

The proponent of the compromise has the burden of persuading bankruptcy court that proposed compromise has met the fair and equitable test. In re Planned Protective Services, Inc., 130 B.R. 94 (Bankr. C.D. Cal. 1991).

## IV.

## ARGUMENT

For the court to approve the Debtor's Motion for Order Approving Settlement, Debtor has the burden of persuading the court the compromise is fair and reasonable. A & C Properties, 784 F.2d at 1381. Under the terms of the compromise, the Guarantor's $5,600,000 personal guarantee is cancelled in exchange for a $1,000,000 unsecured promissory note payable with interest in five years. In exchange for that 82% reduction in principal and the five year deferral of payments, it is unclear whether the Debtor receives anything in return. The Guarantor may still file for bankruptcy, and may be still be unable to satisfy the $1,000,000 obligation in five years.

Indeed, there appears to be no good reason to approve the proposed settlement. Debtor had the burden to show the settlement is fair and equitable. Considering the factors outlined in A & C Properties, Debtor has failed to show that any of the factors weigh in favor of compromise. Accordingly, Debtor's Motion for Order Approving Settlement should be denied.

### A. There is no Compulsion to Settle Litigation

As the party proposing settlement, Debtor had the burden of persuading the court that the proposed compromise would settle a lawsuit which was unlikely to succeed on the merits.

Debtor has presented no argument or contextual analysis to support that contention. The facts appear uncontested and could be simply presented, as indeed they have been in connection with the proposed compromise. See "Recitals" from Debtor's Motion for Order Approving Settlement, Exhibit A, at 1. Debtor has not identified any potential defense or reason to expect uncommon complexity or difficulty.[1] Indeed, a straightforward action to enforce the Guarantor's $5,600,000 personal guarantee seems likely to succeed.

Moreover, there appears clear value in pursuing the lawsuit. The property securing the Mountain House Loans has been described as having "no market value"[2], "negative value" and "virtually no value". Debtor's Motion for Order Approving Settlement at 7:11-12. With such a large undisputed personal guarantee securing property which has no value, there appears clear benefit to pursuing the Guarantor.

The lawsuit seems likely to succeed; however, even if the Debtor determines not to bring suit at this time, there appears to be no reason to reduce the debt from $5.6 to $1 million. Debtor is not receiving anything in return for the unilateral reduction. Therefore, this factor weighs in favor of denying the Debtor's Motion.

**B.    The Terms of the Settlement Make Collection More Difficult**

Debtor has the burden to show that the proposed settlement would reduce the difficulties of collection. Instead, it appears the proposed settlement would make collection more difficult. The only evidence presented regarding the Guarantor's financial condition is the Guarantor's apparent -$78,717,400 net worth and admitted preparation to file for Chapter 7 bankruptcy.[3] There is no indication or reason to believe the Guarantor will be in a position to satisfy the proposed $1,000,000 unsecured promissory note in five years. Moreover, if the Guarantor has any assets currently available for creditors, they will likely be exhausted by 2017.

---

[1] The Debtor has indicated the losing party would likely appeal the verdict to the California Court of Appeals and California Supreme Court. [Docket 646] at 8:3-5.
[2] William Dyer Delc., at 3:2-3. William Dyer is the president of IFA.
[3] IFA has indicated the Guarantor is attempting to resolve all his contingent liabilities with settlements similar to the one proposed here, and the Guarantor will file for bankruptcy if those efforts are unsuccessful. Motion to Approve Settlement, at 4:18-21.

Given the Guarantor's current financial situation and stated plans, it seems probable the Guarantor will file for bankruptcy. The Committee is concerned the proposed Settlement Agreement reduces any potential recovery by 82% and, in a rather unreasonable *quid pro quo*, merely postpones the inevitable cost of litigation and collection until the Guarantor files for bankruptcy or five years, whichever comes first.

The Debtor has failed to show that the proposed settlement reduces the difficulty of collection. Therefore, this factor weighs in favor of rejecting the Debtor's Motion.

### C.     The Issues Appear Straightforward with No Need for Settlement

Similarly, the third factor—the complexity of litigation and the expense, inconvenience or delay attending it—does not support compromise. Here, the lawsuit being settled appears a straightforward action to enforce the Guarantor's $5,600,000 promissory note. The facts appear uncontested and could be simply presented, as indeed they have been in connection with the suggested compromise agreement. See "Recitals" from Debtor's Motion for Order Approving Settlement, Exhibit A, at 1. Debtor has provided no evidence or contextual analysis suggesting the complexity of the lawsuit weighs in favor of settlement.

### D.     The Unsecured Creditors Committee Does Not Approve This Settlement

The court must consider the paramount interest of the creditors and afford a proper deference to their reasonable views. A & C Properties, 784 F.2d at 1382. By the terms of the settlement, the compromise reduces the principal by 82%, releases liens for no consideration, and suspends all payments for five years. It is not clear the Creditors get anything in exchange. The gross disparity between the principal and the amount of the settlement underscores the need for the Debtor to explain and set forth the specific factual and legal reasons why the compromise is in the best interests of the creditors and the estate.

Without details regarding the litigation being settled, there is inadequate information to assess the nature, fairness, reasonableness or adequacy of the proposed compromise. Therefore, there seems little reason to approve the settlement, and the Committee does not approve. This factor weighs in favor of denying the Debtor's Motion.

## V.
## CONCLUSION

For the foregoing reasons, the Committee hereby respectfully requests that the Court deny Debtor's Motion for Order Approving Settlement Agreement; and grant such other and further relief as the Court may deem just and proper.

DATED this 8th day of August, 2012.

SHEA & CARLYON, LTD.

By:_____
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 02666
701 Bridger Ave., Suite 850
Las Vegas, Nevada 89101

*Attorney for the Official Unsecured Creditors' Committee of Integrated Financial Associates, Inc.*