ALAN R. SMITH, ESQ., #1449
Law Offices of Alan R. Smith
505 Ridge Street
Reno, Nevada 89501
Telephone: (775) 786-4579
Facsimile: (775) 786-3066
email: mail@asmithlaw.com

*ELECTRONICALLY FILED* - January 16, 2013

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

—ooOoo—

In re:

INTEGRATED FINANCIAL ASSOCIATES, INC., a Nevada corporation,

Debtor.

_____/

Case No. BK-S-11-13537-lbr
Chapter 11

**DEBTOR'S OBJECTION TO CLAIM OF MUSTAPHA ASSI REVOCABLE LIVING TRUST DATED JUNE 23, 2003 (CLAIM NO. 2-2)**

Hearing Date:  February 19, 2013
Hearing Time:  1:30 p.m.

(Preliminary Hearing)

Debtor, INTEGRATED FINANCIAL ASSOCIATES, INC., a Nevada corporation, hereby objects to the claim of MUSTAPHA ASSI REVOCABLE LIVING TRUST DATED JUNE 23, 2003 ("Assi"), as amended, filed on January 10, 2013, for the amount of $5,573,046.38, as Claim No. 2-2 (the "Claim")[1]. This objection is made pursuant to 11 U.S.C. § 502(b) and Local Rule 3007, and is based upon the following grounds:

/ / /

---

[1] Assi originally filed its claim against the Debtor as Claim No. 2 on April 8, 2011, in the amount of $759,235.31 for money loaned. On July 12, 2011, Assi filed Claim No. 26 in the amount of $2,219,000 for "Land Loans." Then on January 18, 2012, Assi filed Claim 45, as an amendment to Claim No. 2, in the amount of $1,004,797.01 (the $759,235.32 claim plus an alleged discrepancy of $245,561.70). On January 10, 2013, Assi filed a notice of withdrawal of Claims 26 and 45, stating that the withdrawal did not affect Claim No. 2, nor any subsequent amendments. Assi filed a second notice of withdrawal of Claims 26 and 45 the following day on January 11, 2013. On January 10, 2013, Assi also filed Amended Claim 2-2 for the amount of $5,573,046.38, which includes the $75,235.31 for money loaned, $245,561.70 for an alleged discrepancy, $200,000 for its estimated share of proceeds, and treble damages for alleged misappropriation.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd

## STATEMENT OF GROUNDS FOR THE OBJECTION

1. The Claim is estimated and unliquidated.

2. The Claim is grossly overstated, and Debtor asserts that it is only obligated to Assi for the amount of $759,235.32 (the amount of Assi's original claim).

3. The Claim is unsupported by fact and law, and is therefore not valid.

4. Except for the $759,235.32, which the Debtor agrees is owed to Assi, the Debtor objects to all remaining amounts claimed by Assi, as well as all claims based upon allegations of wrongdoing.

5. The Claim, as amended, is untimely and beyond the claims deadline.

6. This Objection is based upon Declaration of William Dyer, which is filed in support hereof and incorporated herein by reference.

## FACTUAL BACKGROUND

**A.   Background.**

In 2010, Mustapha Assi ("Mr. Assi"), as trustee for the Mustapha Assi Revocable Trust, sued the Debtor, IFA Capital, William Dyer, Tom Lea, and other shareholders of the Debtor in the District Court, Clark County, Nevada, Case No. A-10-621021-C (the "State Court Action"), making essentially the same allegations as contained in Assi's proof of claim. The Debtor stipulated to a judgment against IFA Capital, as there was no defense to Assi's claim that IFA Capital had defaulted on its obligation. The shareholders were dismissed after Debtor's counsel sent a Rule 11 letter to Assi's counsel. The court granted IFA's motion to dismiss against Assi on its claim of unjust enrichment against IFA Capital, as well as the breach of contract allegation against the Debtor. The court denied the motion to dismiss the unjust enrichment claim against the Debtor. The State Court Action was stayed as a result of the Debtor's filing of its bankruptcy petition.

Thereafter, Assi was appointed as one of seven members of the Official Unsecured Creditor's Committee (the "Committee") in the Debtor's Chapter 11 case. The Debtor is informed that Assi raised the same allegations against the Debtor to the Committee that had been raised in the State Court Action, specifically, that Debtor failed to exercise its

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd       - 2 -

fiduciary obligations to its clients, failed to timely record assignments on behalf of the investors, sold lots belonging to investors without remitting payments to the investors, misrepresented the safety and quality of the investments and engaged in deceptive advertising practices. As a result, and as part of an independent audit performed by the Committee's accounting firm, four auditors spent over two weeks reviewing thousands of pages of documents related to the Summerwind loan, which is the subject of Assi's Claim. To the best of the Debtor's knowledge, the Committee's auditors <u>did not find one single fact to support any of Assi's allegations</u>.[2]

Despite the auditor's findings, Assi filed a complaint with the State of Nevada, Department of Business and Industry, Division of Mortgage Lending (the "Mortgage Lending Division" or "MLD") in or about February, 2012, alleging that the Debtor violated NRS 645B in the origination and management of several private money transactions, including the Summerwind and Eagle Falls loans. A true copy of the letter dated March 2, 2012, addressed to the Debtor from the Mortgage Lending Division is attached as **Exhibit A** to the Declaration of William Dyer. Assi made the same allegations as it did to the Committee. On March 14, 2012, in response to the MLD's letter, the Debtor supplied documentation to the MLD controverting the allegations set forth in Assi's complaint. A true copy of the March 14, 2012 letter from the Debtor to the MLD is attached as **Exhibit B** to the Declaration of William Dyer. After reviewing the responsive letter and documentation provided by Debtor, the MLD, satisfied that there was no validity to Assi's allegations, chose not to pursue Assi's complaint.

Nevertheless, Assi continues to assert its Claim against the Debtor, although there is no basis to do so as further discussed below.

B.    **Basis of Assi's Claim.**

Assi asserts a claim against the Debtor for the amount of $5,573,046.38, which is based upon the following allegations:

---

[2] Apparently unhappy with the results of the Committee's audit, as well as the Committee's refusal to pursue the Debtor based upon Assi's allegations, Assi resigned from the Committee.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd    - 3 -

(a) Debtor allegedly failed to satisfy an unsecured debt obligation;

(b) Debtor allegedly misappropriated funds tendered by Assi for the purpose of investment;

(c) Debtor allegedly misappropriated proceeds received by Debtor from sales transactions;

(d) Assi has allegedly suffered damages as a result of alleged "pervasive and massive" fraud allegedly perpetrated by the Debtor.

Assi is seeking treble damages pursuant to NRS 41.580 based upon a claim of $245,561.70, as well as attorneys' fees.

A true copy of Assi's Claim is attached hereto **Exhibit A**.

C.   **Basis of the Debtor's Objection.**

(1)   **The Claim, As Amended, Is Untimely And Should Be Disallowed In Part.**

The deadline to file claims in this case was July 13, 2011, as established by the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines entered by the Court on March 14, 2011 (Doc. 6). Assi filed its Claim No. 2 on April 8, 2011, for the amount of $759,235.32, which the Debtor agrees is owed. Then on January 18, 2012, Assi amended Claim No. 2 (filed as Claim 45), and increased the amount of its claim to $1,004,797.01 to include an alleged discrepancy in amount (the $759,235.32 claim plus an alleged discrepancy of $245,561.70). Neither of these claims included any allegations of misappropriation or fraud. On January 10, 2013, Assi withdrew Claim No. 45, but, **without court approval**, filed an amendment to Claim 2, and for the first time alleged misappropriation and fraud against the Debtor. The claim was increased to $5,573,046.38 to included treble damages and attorney's fees. As discussed in Section D below, Assi's claims for misappropriation and fraud are beyond the claims deadline, have no relation-back to the original claim, and should therefore be disallowed.

///

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd    - 4 -

### (2) The Debtor's Lending Practices Has Been Continually Audited By Several Third-Parties And Has Established No Wrongdoing By The Debtor.

Since 1997, the Mortgage Lending Division has audited all of the Debtor's loans and has never reported a single discrepancy related to the original or servicing of loans. In addition, the Debtor's trust accounts have been independently audited by Ovist & Howard on a monthly basis, and there has never been a single issue related to the misappropriation of any funds received or disbursed by IFA. The Committee's accountants also audited the loans subject to Assi's Claim and found no discrepancy. The Debtor believes that Assi's Claim is frivolous and based upon an erroneous accounting. Furthermore, Assi has presented no evidence in support of its Claim.

### (3) The $245,561.70 Portion of The Claim Is Based On An Erroneous Accounting.

The Debtor believes Assi arrived at the $245,561.70 portion of its Claim by relying upon the Debtor's Quickbooks "Find Report" (see **Exhibit C** to the Declaration of William Dyer). By deducting Assi's trust deed investments in the amount of $1,958,655 from the amount listed in the "Find Report" ($2,204,217), the balance is $245,561.70. However, Quickbooks' is not the accounting system the Debtor uses to account for loan transactions. Instead, the Debtor handles all trust deed accounting transactions in its special loan servicing software system called Applied Business Systems (ABS), **not** through Quickbooks.

The Quickbooks "Find Report" produces an erroneous picture of debits and credits - sometimes just a credit, and other times both a credit and debt. In addition, Quickbooks does **not** account for an investor's initial investment in a particular loan, nor does it account for payoffs or partial payoffs received. Again, those transactions are accounted for in ABS and investor checks are cut using the ABS system, not Quickbooks. If an investor puts up money to participate in a loan, the funds are deposited into the IFA Investor Trust Account pursuant to Nevada law, where they are held until the loan funds.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd    - 5 -

When those funds are placed into a loan, the Debtor debits the Investor Trust Account, which is shown on the Find Report as "Trust Money" coming out of the Investor Trust Account. See **Exhibit C** (Transaction Nos. 5, 6, and 12-24), attached to the Declaration of William Dyer. Those funds are deposited into IFA's Commercial Account and then a "batch" transfer is simultaneously sent to the related escrow to close the loan. Accordingly, "debits" are seen on the report without corresponding credits. The credits appear in the Loan Investment Transaction Report, as shown in **Exhibit D** to the Declaration of William Dyer (described as "Initial Investments in the Transaction Description"). The loan numbers and dollar amounts tie to the penny. The Debtor's trust accounts during this period were audited monthly by Ovist & Howard and also audited annually by the State of Nevada. No discrepancies were ever reported.

The Quickbooks "Find Report" attached to Assi's proof of claim shows trust deed investments where the Debtor repurchased Assi's interest in a particular loan (at his request) totaling $300,000 (See **Exhibit C** (Transactions 1,2,3,4,7 and 8) to the Declaration of William Dyer). Because the distribution was to Assi individually, the report picked up both the debit to the Loan Investments and the corresponding credit to the Debtor's commercial account, from which the check was drawn, so the transactions net to zero, rather than showing the $300,000 repurchase of Mr. Assi's investment in those loans (Loan Nos. 28-002 and 27-011). As stated above, in most cases, Quickbooks will not show the credit because the funds are disbursed in a batch transfer along with those of the other loan investors.

A review of the transaction history from ABS ties to the Lender Statement of Account for the period 2005 through 2012 to the penny. The report shows an opening balance of $100,000. It then shows each payment received or investment made in each loan, referenced by loan number, loan name, and a description of the transaction, including partial loan paydowns, payoffs, and instances where the Debtor repurchased Assi's interest in a loan (as referenced above). In addition, in some cases, the principal balance of his investment has **increased** due to other investors abandoning their interest

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd    - 6 -

in a loan for tax purposes and a corresponding, pro-rata increase in the amount owned by the remaining investors (see Loan No. 27-013 and 27-030 shown in **Exhibit D** attached to the Declaration of William Dyer).

Finally, the Lender Statement of Account (attached as **Exhibit E** to the Declaration of William Dyer) is produced from the ABS program and shows the Loan Investment amount of $1,971,349 due to additional abandonments in 2012. It also shows all of the principal and interest paid to Assi since January 6, 2005 totaling **$421,760.92 in interest.**

As discussed above, the accounting from ABS is accurate and should be the accounting relied upon, **not** the reports generated from Quickbooks.

### (4) All Sales Transactions Have Been Accounted For.

In addition, Assi alleges that it is entitled to "proceeds" in the amount of $200,000, which amount allegedly remains unaccounted for by the Debtor. It is unclear from the Claim what sales transactions Assi is referring to. **Exhibits D and E** to the Declaration of William Dyer show all of the principal payments sent to the Debtor since 2005. In no case has the Debtor ever received a principal reduction related to a loan that was not disbursed to the investors, except in more recent partial payoffs, where proceeds have been used to pay delinquent taxes related to a specific property, but only following approval by a majority of the investors on the loan. Again, the Debtor's accounts have been audited by Ovit & Howard, LL Bradford, and the Mortgage Lending Division of the State of Nevada, and no evidence that there has been a misappropriation of funds by the Debtor has ever been alleged. This is the same allegation that Assi made in his complaint to the State of Nevada (**Exhibit A** to the Declaration of William Dyer) immediately prior to the renewal of the Debtor's Mortgage Broker's license. The Debtor responded (**Exhibit B** to the Declaration of William Dyer), producing over 500 pages of documents, and the MLD dismissed Assi's allegations as baseless.

### (5) There Was No Misappropriation Of Assi's Investment Funds As Alleged In The Claim.

Assi alleges that it is owed $1,958,655.35 from the Debtor for allegedly using

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd         - 7 -

investment funds and loan proceeds to pay of Debtor obligations to third parties and fund Debtor's operations. This amount ties to the amount of Mr. Assi's beneficial interest in the loans secured by deeds of trust that correspond to the investments shown on **Exhibits D and E** to the Declaration of William Dyer (after adjusting for abandonments). Mr. Assi specifically requested to have his funds placed in these loans and signed all applicable documents as required by the Mortgage Lending Division, including loan servicing agreements and power of attorney forms. These documents can be produced upon request.

### (6) None Of Assi's Investment Funds Were Improperly Transferred To IFA Capital.

Assi alleges that the Debtor improperly transferred $759,235.32 of its investment funds to the Debtor's wholly owned subsidiary, IFA Capital. This is not true. Attached as **Exhibit F** to the *Declaration of William Dyer* is a true copy of the seven Subscription Agreements signed by Mr. Assi regarding his investment in IFA Capital. This is the same allegation he made in his state court lawsuit against the Debtor. Mr. Assi knew exactly where his investments were going and, in fact, since 2005, Assi received $365,049.44 for his IFA Capital investments.

A "Statement of Account" prepared by IFA Capital shows all payments made to Assi related to IFA Capital since 2005. See **Exhibit G** attached to the *Declaration of William Dyer*. IFA Capital used the Fidelity Mercury Credit Union System ("Mercury") for the accounting of all IFA Capital transactions. This Statement of Account is a summary report that show Assi's investment in each "Note Program". The first such investment is shown as "Suffix 12". Subsequent investments are shown as Suffix 121, 122, 123, etc. If Assi withdrew funds or was paid off on one of the "Notes", and then reinvested the funds, the new investment shows up as the next subsequent Suffix number. For example, "Suffix 12" shows an initial investment of $500,000 on October 6, 2005, then a $200,000 principal pay down on December 9, 2005, and a payoff in July 2006. The other payments shown are interest payments.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd    - 8 -

Also, a "Transaction Report" was generated by IFA Capital which listed the same transactions by entity and by month. See **Exhibit H** attached to the *Declaration of William Dyer*. Accordingly, in October, 2005, the Transaction Report shows the interest payments of $1,643.84 for Suffix 121 and $3,424.66 for Suffix 12. These amounts tie to the Statement of Account payments for the same periods. These reports show clearly that Assi had invested and re-invested in multiple IFA Capital note investments since 2005 and during that period he received numerous interest payments, principal payments, and he reinvested the principal on multiple occasions, and that, during that period, he received interest payments of over $365,000.

Based upon the foregoing, while the Debtor agrees that it owes Assi the amount of $759,235.32 for its unpaid investment in IFA Capital, the debt is not a result of any wrongdoing or impropriety as alleged by Assi.

## LEGAL ARGUMENT

**A.    Applicable Standards.**

11 U.S.C. § 502(b) provides that any claim for which a proof of claim has been filed will be allowed unless a party in interest objects. If a party in interest objects to a proof of claim, the court, after notice and hearing, shall determine the amount of the claim and allow the claim except to the extent that the claim is "unenforceable against the debtor... under any ... applicable law for a reason other than because such claim is contingent or unmatured." A properly-filed proof of claim is presumed valid under Bankruptcy Rule 3001(f). However, once an objection to the proof of claim controverts the presumption, the creditor ultimately bears the burden of persuasion as to the validity and amount of the claim. See <u>Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Mortg.)</u>, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd* 92 F.3d 151 (9th Cir. 1996). The ultimate burden of proof as to the validity of the proof of claim "remains at all times upon the claimant." <u>Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)</u>, 223 F.3d 1035, 1039 (9th Cir. 2000). Accordingly, Assi bears the burden of proof and persuasion as to both the validity and amount of its claim.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd         - 9 -

### B. Assi's Claim Is Unsupported By The Facts.

As discussed above, the Claim is based upon Assi's misunderstanding of the Debtor's accounting, based upon Assi's reliance upon the Debtor's Quickbooks reports. The accounting issues alleged by Assi have been thoroughly explained above. There has been no wrongdoing or misappropriation by the Debtor. The Debtor has undergone regular audits from third parties, including the State of Nevada, Mortgage Lending Division, Ovist & Howard (auditors), and auditors employed by the Committee for the specific purpose of scrutinizing the Debtor. None of the audits produced any evidence of wrongdoing or impropriety, much less establish the claims asserted by Assi.

### C. Assi Is Not Entitled To Treble Damages Or Attorneys' Fees.

Assi claims that the Debtor is liable for treble damages pursuant to NRS 41.580. NRS 41.580 specifically provides:

> If property has been taken from its owner by larceny, robbery, burglary, embezzlement, theft or any other offense that is a crime against property and another person buys, receives, possesses or withholds the property under circumstances that make such conduct a violation of subsection 1 of NRS 205.275, the owner of the property may bring a civil action against the person who bought, received, possessed or withheld the property and may recover treble the amount of any damage the owner has suffered, together with the owner's costs in the action and a reasonable attorney's fees.

There is absolutely no evidence that the Debtor misappropriated any money from Assi, or acted with any impropriety whatsoever. In fact, the opposite is true. The Debtor has been subject to numerous and regular independent audits by the State of Nevada, Mortgage Lending Division, Ovist & Howard, and by the Committee in this case, and all of the Debtor's loan transactions, including Assi's, have been scrutinized and no evidence of misappropriation or wrongdoing was ever found. As discussed above, Assi's claims are based simply on Assi's misunderstanding of the Debtor's accounting methods. Accordingly, Assi's claims for treble damages and attorney's fees are unwarranted and should not be allowed.

/ / /

/ / /

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd    - 10 -

### D. The Claim, As Amended, Is Untimely.

Ordinarily, an amendment to a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim, as well as the creditor's intent to hold the estate liable.  In re Yellowstone Club World, LLC, 2010 Bankr. LEXIS 810 *14-15 (Bankr. D. Mont. 2010); In re CF&I Fabricators of Utah, Inc., 148 B.R. 332, 342 (Bankr. D. Utah 1992); In re Unioil, Inc., 962 F.2d 988, 993 (10th Cir. 1992).  However, a truly new claim should not be permitted beyond the claims deadline.  In re Unioil, Inc., 962 F.2d at 992 ("[a]lthough amendments to proofs of claim may be freely permitted 'to cure a defect in the claim as originally filed,' a creditor may not assert new claims after the bar date under the guise of amending its claim."); In re CF&I Fabricators of Utah, Inc., supra.

In the case of In re Westgate-California [Corp], 621 F.2d 983 (9th Cir. 1980), the Ninth Circuit Court of Appeals rejected untimely amended proofs of claim. Without identifying the nature of the claims involved, the court simply stated that the amended proofs of claim "cannot relate back to the date of the original proofs because the original claims did not give *fair notice of the conduct, transaction, or occurrence* that forms the basis of the claim asserted in the amendment." (Emphasis added); see also, In re Solari, 63 B.R. 115, 117 (9th Cir. BAP 1986).

Here, Assi's Claim Nos. 2 and 45 did not give fair notice to the Debtor that Assi would be alleging claims for misappropriate or fraud.  In fact, the Debtor believed that Assi's tort claims had been resolved, as evidenced by the fact that the majority of Assi's claims were dismissed in the state court, and its complaint to MLD was not accepted.  Assi certainly **knew** of its tort claims at the time it filed Claim Nos. 2 and 45, however, for some reason it failed to include those tort claim when it filed its original claim. The Debtor has been laboring on its plan of reorganization, and such plan will be adversely prejudiced, especially since the damages claimed by Assi are so substantial.  See In re Bajac Construction Co., 100 B.R. 524 (Bankr.

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd    - 11 -

E.D. Cal. 1989) (In a Chapter 11 proceeding, there may well be equities present which make it proper to reject the attempted amendment to a claim. The process of reorganization may be too far along and various parties who have labored on the plan may be adversely prejudiced if amendment is permitted).

It is highly prejudicial to the Debtor to allow Assi to untimely assert its tort claims at the eleventh hour before plan confirmation, especially since he knew of the claims prior to the claims bar date. Accordingly, the Debtor submits that Assi's Claim should be disallowed in the amount of $4,813,811.06.

## CONCLUSION

Based upon the foregoing, the Debtor respectfully request that Assi's Claim (No. 2-2) be allowed only for the amount of $759,235.32, and the remainder of Assi's Claim be disallowed in its entirety.

DATED this 16th day of January, 2013.

LAW OFFICES OF ALAN R. SMITH

*/s/ Alan R. Smith*

By_____
ALAN R. SMITH
Attorney for Debtor

Law Offices of
ALAN R. SMITH
505 Ridge Street
Reno, Nevada 89501
(775) 786-4579

H:\Integ Fin Assoc\Claims\Assi\Obj Clm 011613.wpd          - 12 -

# Exhibit "A"

B 10 (Official Form 10) (12/12)

| UNITED STATES BANKRUPTCY COURT    District of Nevada | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor:<br>Integrated Financial Associates, Inc. | Case Number:<br>BK-11-13537 | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Mustapha Assi Revocable Living Trust Dated June 23, 2003 | |
|---|---|
| Name and address where notices should be sent:<br>c/o Gordon Silver<br>Attn: Talitha Gray Kozlowski, Esq.<br>3960 Howard Hughes Pkwy, 9th Floor, Las Vegas, NV 89169<br>Telephone number: (702) 796-5555    email: tgray@gordonsilver.com | COURT USE ONLY<br>☑ Check this box if this claim amends a previously filed claim.<br>Court Claim Number: 2<br>*(If known)*<br>Filed on: 04/08/2011 |
| Name and address where payment should be sent (if different from above):<br><br>Telephone number:    email: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

1. **Amount of Claim as of Date Case Filed:**    $ 5,573,046.38

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** See attachment
   (See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as:<br><br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br>(See instruction #3b) |
|---|---|---|

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____

Annual Interest Rate _____% ☐ Fixed or ☐ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

Basis for perfection: _____

Amount of Secured Claim: $_____

Amount Unsecured: $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/12) 2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.    ☑ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)    ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Talitha Gray Kozlowski, Esq.
Title:
Company: Gordon Silver
Address and telephone number (if different from notice address above):

(Signature)    1/10/13 (Date)

Telephone number:    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Official Form 10) (12/12)    3

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities *do not represent the bankruptcy court or the debtor.* The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq*.), and any applicable orders of the bankruptcy court.

ATTACHMENT TO THE PROOF OF CLAIM OF MUSTAPHA ASSI, TRUSTEE OF THE MUSTAPHA ASSI REVOCABLE LIVING TRUST DATED JUNE 23, 2003 AGAINST INTEGRATED FINANCIAL ASSOICATES, INC.

Pursuant to 11 U.S.C. § 501 and Fed. R. Bankr. P. 3001, Mustapha Assi ("Assi"), Trustee of the Mustapha Assi Revocable Living Trust Dated June 23, 2003 (the "Assi Trust"), submits this summary of claims against Integrated Financial Associates, Inc. ("Debtor") in connection with filing its proof of claim. The Assi Trust's claims against Debtor are based upon the following: (i) Debtor's failure to satisfy an unsecured debt obligation; (ii) misappropriation of funds tendered by the Assi Trust for the purpose of investment; (iii) misappropriation of proceeds received by Debtor from sale transactions; and (iv) damages incurred as a result of a pervasive and massive fraud perpetrated by Debtor. Due to the voluminous nature of documents supporting the Assi Trust's claims against Debtor, it is not feasible to attach all supporting documentation to the proof of claim. Accordingly, the Assi Trust provides this summary of its claims in compliance with Fed. R. Bankr. P. 3001 and will make supporting documentation available for inspection and/or copying upon written request to counsel for the Assi Trust, c/o Talitha Gray Kozlowski, Gordon Silver, 3960 Howard Hughes Parkway, 9th Floor, Las Vegas, NV 89169, (702) 796-5555. The Assi Trust expressly reserves the right to submit documentation in support of its claims against Debtor.

I.    GENERAL BACKGROUND

1.    Over the course of many years, Debtor collapsed under the weight of the massive fraud perpetrated against its loan investors, whereby Debtor employed a pervasive "Ponzi"-like scheme in which its principals looted and/or misappropriated millions of dollars.

2.    Debtor was a mortgage broker and loan servicing company whose primary business activities were: (i) "originating" short-term loans by private investors to commercial real estate developers; and (ii) servicing the loans that it originated by collecting

principal and interest from borrowers and distributing those payments to the investors, as well as distributing any profit proceeds resulting from sale transactions. Debtor earned revenue by charging various fees for these services, including origination and servicing fees.

3. Millions of dollars of the payments collected from borrowers and proceeds received from sale transactions were misappropriated by Debtor to: (i) pay-off Debtor's obligations to third parties; and (ii) fund its operations.

4. Debtor caused the Assi Trust to enter into numerous non-performing loans and transactions to the direct and indirect benefit of Debtor, involving such borrowers as: (i) Kyle Canyon Holdings II, LLC; (ii) Desert Highlands Associates, LLC, (iii) Golden State Investments, LP & Pegasus-MH Ventures; (iv) Logandale Real Estate Partners, LLC; (v) Summerwind Partnes, LLC; (vi) Eagle Falls Partners, LP; L217-1 ID Eagle Linder LLC; (vii) Hazel Lake Holdings, LLC; (vii) 325 Texvada Investments, LLC; (viii) Essex Real Estate Partners, LLC; and (ix) 325 Paso Holdings, LLC.

5. Debtor's books and records reflect the aggregate principal balance of the Assi Trust's interest in the loans to the foregoing entities amounts to $1,958,655.35. In contrast, the records maintained by the Assi Trust reflect the aggregate total of $2,204,217.05 transferred to Debtor for the purpose of investment with such entities, thus leaving approximately $245,561.70 unaccounted for by Debtor and presumably misappropriated for the benefit of Debtor.

6. As a result of certain sale transactions, Debtor received proceeds to which the Assi Trust was rightfully entitled. The Assi Trust estimates that its share of such proceeds amounts to $200,000, which sum remains unaccounted for by Debtor and was presumably misappropriated for the benefit of Debtor.

7. Additionally, certain monies tendered to Debtor by the Assi Trust for the purpose of investment in fractionalized interests in deeds of trust were improperly transferred to Debtor's wholly owned subsidiary, IFA Capital, LLC ("IFA Capital").

8.  Shortly before the commencement of this Chapter 11 Case, Debtor caused IFA Capital to "merge into" Debtor (the "IFA Capital Merger") and issued promissory notes to the purported individual IFA Capital investors. The Assi Trust was one such purported IFA Capital investor. As a result, the Assi Trust received a Promissory Note dated March 1, 2011 (the "2011 Promissory Note"), which obligated Debtor to the Assi Trust in the principal sum of $759,235.31 with interest accruing at the rate of 10% per year.

II.    SUMMARY OF CLAIMS AND DAMAGES

1.  The Assi Trust intends to hold Debtor liable and seeks reimbursement from its bankruptcy estate for damages in the amounts set forth below.

2.  Upon information and belief, Debtor is liable to the Assi Trust for, among other things, receipt of stolen property in violation of N.R.S. 41.580, unjust enrichment, and money had and received.

3.  Upon information and belief, Debtor is liable for damages to the Assi Trust: (i) in the amount of $245,561.70 for funds that Debtor received for the purpose of investment in fractionalized deeds of trust, but remain unaccounted for by Debtor, which amount increases to $736,685.10 under the treble damages provisions of N.R.S. 41.580; (ii) in the amount of $200,000 for proceeds Debtor received to which the Assi Trust was entitled as a result of certain sale transaction, but remain unaccounted for by Debtor, which amount increases to $600,000 under the treble damages provisions of N.R.S. 41.580; (iii) in the amount of $1,958,655.35 for using investment funds and loan proceeds to pay off Debtor obligations to third parties and fund Debtor's operations; and (iv) in the amount of $759,235.31 with interest accruing at the rate of 10% per year, which amount is due and owing under the 2011 Promissory Note, and which amount increases to $2,277,705.93 under the treble damages provisions of N.R.S. 41.580. The total aggregate damages claimed by the Assi Trust amount to $3,163,452.35, which sum increases to $5,573,046.38 when certain portions are trebled pursuant N.R.S. 41.580.

4.  In addition to the foregoing claims and categories of damages, the Assi Trust has incurred and continues to incur substantial attorneys' fees to prosecute these claims

against Debtor. The Assi Trust expressly reserves the right to seek reimbursement of these attorneys' fees from Debtor's bankruptcy estate. Upon information and belief, Debtor is liable to the Assi Trust for over $5.5 million in damages for the claims and categories of damages described herein.

5.      The Assi Trust is continuing to investigate all the facts and circumstances surrounding the Debtor's bankruptcy filing because the fraudulent scheme perpetrated upon Debtor's investors was so pervasive and occurred over such an extended period of time. As such, the Assi Trust expressly reserves the right to supplement and/or amend its proof of claim against Debtor as information becomes available.